JANE FORTESCUE

*v.*

WILLIAM BOWLER et al.

1. A tenant, having no contract with or consent from the landlord, con-
structed a back building and permanently attached the same to the rear end
of a house on the demised premises, in such manner that its removal will leave
the original structure without any enclosure at the rear end.   The original
building and the added structure have, since the latter was built, been used
together for a hardware store, neither being usable for that purpose without
the other.   At the time the back building was constructed, the tenant had
no formed intention either to make a permanent addition to the premises
or to remove the structure.—*Held*, the back building has become part of the
freehold.

2. The court of chancery has jurisdictiion to stay waste by enjoining the
removal of such a structure by the tenant.

On bill &c.

---

---

*Mr. Allen B. Endicott* and *Mr. David J. Pancoast,* for the complainant.

*Mr. Clarence L. Cole,* for the defendants.

GREY, V. C. (oral opinion).

The case is within such narrow limits that I think it may be readily passed upon now, quite as fully and safely as if further consideration be given to it.

The complainant files her bill and seeks to restrain the defendant from the removal of a back building which at present is detached, by severing from the front building, but still remains on her premises. The building came on the premises under these circumstances: The complainant was the owner of a lot in Atlantic City, on which there stood a frame structure, and her brother, the defendant, with her assent, entered into possession of the premises and the use of the same for a hardware store. The structure then on the premises consisted of a frame building thirty-two feet front, and running back on that width for some distance on the lot. The rear end of this structure had, as I gather from the testimony, an extension shed or lean-to, which covered part but not the entire height of the rear end. That was the condition when the defendant entered into possession. After he had been there two years, without consulting the complainant or receiving any consent or direction from her, he took down the whole rear end of the original structure and removed it, putting up the shed or lean-to part, on some other property of the complainant, and it has thereafter remained in her possession and use. At the same time the defendant added to the original building the structure which is now in dispute. The addition was built on piles, which is the common mode of building in Atlantic City, where the water is so near the surface that unless an elevation is made around the cellar wall it is almost impossible to have a cellar; certainly below the depth of three feet it practically makes a cellar useless. For that reason, and because of the custom which seems to have obtained there, buildings were mostly built on wood piles driven into the ground.

The building was constructed on the premises for this particular place, and was not moved there, having been built somewhere else.  It came on the premises as lumber, boards and tin for the roof, and when it had been put there, with the addition of the labor of those who were there for the purpose of making the structure, it became the building now in dispute.  It was annexed to and made part of the original building by nails driven into the frame, as I gather from the testimony, along the whole height of the structures so far as they touched each other.  The nails have been detached, and the nail-marks may still be seen. When it was built it covered the whole rear end of the complainant's building which had been taken away, which was one-story high, and had also a second story.  Without this covering by the new building, the old building, after its rear end had been taken away, would have been absolutely useless and exposed to the weather.  The new building consisted of a frame structure, built on piles as stated, with the sill probably six by eight inches in size.  It was about thirty feet deep, having been built at two different times, fifteen feet each, with the first story about twelve feet high and the second story about eight and one-half feet high, and with a tin roof.  When the building was put there it was, as to its first story, so much a part of the first building that it seemed to be impossible for a person to distinguish them from the inside unless by the fact that there was a rise in the floor of about two feet to get into the back building.  This was the structure, so far as the physical construction of it goes, which the defendant put there.  It never had any existence as a structure until it was, by the very act of its creation, permanently attached to and made a part of the freehold.  The defendant put this extension there without the invitation of anybody and without the permission of anybody, and it seems to me the building, when put there, became a permanent addition to the real estate and not a trade fixture in any sense.  It was not when taken on the premises a complete thing, nor when taken away from the premises would it leave the original structure in the condition in which it was when the latter one was put there. If it is taken away it leaves the whole end of the complainant's

building open, and I do not think that the fact that the defendant is willing to repair the damage in any way goes to detract from the force of the argument that the character of the structure as originally made shows what was the nature of the annexation, whether it was a permanent erection and made part of the real estate or a trade fixture. He may be entirely willing to repair the damage caused by the removal, but that is not the question. The point under consideration is not the securing to the complainant what the defendant offers to give—a restoration of the premises to their original condition—but whether or not this court ought to restrain the defendant from taking away what, under the circumstances of this case, was a permanent erection and became a part of the complainant's property.

Another element in the case indicates that this addition has become part of the realty, and that is the use for which the new building was erected, and its relation in this respect to the old one. The use for which the addition was made was a use which was wholly valueless without the continued use of the original structure. The whole building was used as a hardware store. The new erection was, in fact, an extension of the old one, and valuable only when used in connection with and as part of the original structure, making of both a complete hardware store. It was not such an addition as a bellows, or an anvil in a blacksmith shop, for use in carrying on a trade, it was made a part of the original structure itself, and it could not be used without it, nor could the original structure be, after the change, used without the addition. This merger of the use of the two structures into one, whereby both were coincidently and dependently used for the same purpose, is an additional reason which leads me to conclude that the extension was made not as a trade fixture, but as an enlargement of the building then on the premises, thus becoming a part of the realty.

· The question of intention is considered by the courts in many cases where the relation of the parties and the character of the structure leave the question open whether it is a chattel, or a trade fixture, or has become a part of the realty. If the evidence is considered from this point of view there seems to be no

proof before the court of the existence of any intention on the part of the defendant, when he built this addition, not to make it a part of the real estate. He testifies that it was put there without any intention existing in his mind at the time he built it. The court must therefore determine the actual intention which accompanied the construction of the addition, by the evidence of what was then done. The proof shows the construction by a tenant of an addition to an existing building, fastening it to the old building by permanent and non-adjustable attachments, and in such a manner that neither can be separated from the other without opening both to the weather; the new structure being used for the same purpose as the old, and the use of both for those purposes being necessary to the complete enjoyment of either, the removal of either being practically a destruction of the property for that use, the construction having been made without leave obtained from the owner, and without contract therefor, and with no definite intention to remove the new erection.

In my view, the addition was intended, at the time, to be a part of the realty, and, in fact, then became such. I am the more confirmed in this opinion because of the relationship between the parties—brother and sister—and the fact that the tenant paid no rent either during the two years before he made the addition or the many years since. His regard for his sister, his occupancy for two years rent free at the time he built the addition, and his expectation (since fulfilled) of continued gratuitous enjoyment of the premises, may well have led him to build the back building as an improvement to his sister's premises.

Some doubt is suggested as to the jurisdiction of the court to grant an injunction to restrain the removal of the back building, and *Hamilton* v. *Stewart, 59 Ill. 330*, is cited to sustain the claim on the ground that the proposed removal is a mere trespass. In that case the party restrained was a stranger to the premises and out of possession. He claimed to be the owner of certain articles which the plaintiff alleged he intended to take away by force, or by a replevin suit. The court said that an injunction should not go to prevent a mere trespass, or to stay a suit at law to try the

title to fixtures. In the case now on hearing, the defendant admits he is the tenant at will of the complainant and that she is his landlord, and that he is in possession through her gift. He also testifies that he intends to remove off the demised premises a building which this court is of opinion constitutes part of the realty, and that he has in execution of that purpose severed this building preparatory to its removal from the premises.

Here the rights of the parties have been definitely ascertained, and it is shown that the proposed waste will be absolutely destructive of the premises for the uses for which they are most valuable. I speak now of their condition when the back building is removed and without giving any weight to the defendant's statement that he intends to repair the damage he means to do by restoring the building to the condition it was in when he came into possession, which cannot be considered. Lord Hardwicke, in *Farrant* v. *Lovell, 3 Atk. 723,* held that waste in an under-lessee being shown, the ground landlord had the same equity as in other cases of injunction to stay waste. In *Ware* v. *Ware, 2 Halst. Ch. 117,* a tenant by the courtesy was restrained from cutting timber at the instance of the owner of the fee. Chancellor Kent, in *Douglass* v. *Wiggins, 1 Johns. Ch. 435,* allowed an injunction to restrain a tenant of a dwelling-house from converting it into a store. These allowances of the writ, I think, quite justify what is asked in this case. The tenant is put into possession by the landlord and thereby obtains control of the demised premises. His possession is that of his landlord. It is inequitable that he should be permitted so to use his possession as to destroy the landlord's reversion, leaving him to an action of law for his remedy. On the question, then, of jurisdiction, the question presented is simply this: Has the court of chancery power to enjoin a tenant in possession from removing a portion of the real estate off the demised premises and thereby destroying them for their accustomed use?

I do not think there ought to be any question that this court has in such cases full jurisdiction, and that the court ought, under such conditions, to issue a writ and restrain the removal.

There is also in the bill a suggestion as to a restoration of this

hardware building as it was before the defendant severed it. As to that, I think a sufficient remedy can be obtained by the recovery of damages. I am not willing to advise the issue of a mandatory injunction for restoration. If relief for damage done is sought, the complainant has a complete remedy in the courts of law.

I will advise the issue of a perpetual injunction to restrain the defendant from removing the back building of the hardware store from the complainant's premises.