This is a bill to foreclose a mortgage which was executed some years before the mortgagor entered into a written lease with the defendant Strand Theatre Company. The only question for decision is raised by the answer filed by the lessee and its claim is that as between the mortgagee and it, the lessee is entitled to certain additions erected by the lessee on the mortgaged premises. The theory of the defendant lessee is that the additions made by it constitute trade fixtures and are not a part of the realty.
Prior to April 19th, 1933 (the date of the lease in question) the defendant Doughty or those under whom she claims, *Page 443 
being the owners of certain land in Ocean City, oceanward of the boardwalk, located on the ocean front in that city, had erected a theatre building and had operated it mostly as a moving picture house. Just prior to the date aforesaid, defendant lessee had conducted the theatre and was so doing when the city of Ocean City relocated its boardwalk by moving it so far oceanward that the theatre building was some two hundred feet landward therefrom. Defendant lessee endeavored to operate the theatre as it stood and in order to gain access thereto patrons were compelled to walk along Eighth avenue and then by ramp into the entrance facing landward and distant from the boardwalk as aforesaid.
Prior to the execution of the new lease, defendant lessee and the lessor considered alterations, additions and improvements to the theatre building which contemplated the closing of the old front entrance and the construction or erection of a new front entrance facing the boardwalk and the ocean. The result was the execution of the lease in question, under which the lessee went into possession of that portion of the building used for theatre purposes, but excluding all but a space eight feet by twelve feet in that portion of the building which constituted the front as it stood at the time of the execution of the lease. This exception included that portion of the old front of the building formerly used for the entrance, lobby, lavatories, projection room, screen, balcony, halls and stores.
Defendant lessee partitioned off the reserved space aforesaid, moved the projection screen from the old rear to the old front of the building, put in a new floor over the old one, sloping it from the new front to the old front, redecorated the interior and otherwise improved it, and at the same time erected on the vacant lot also included in the April lease, a new entrance structure, which faced the ocean and the boardwalk and which, when completed, housed the new entrance, containing a new lobby, ticket booths, projection room, lavatories, balcony, c.
Connected with this new entrance structure and a part thereof were erected buildings so designed as to give the new entrance the effect or appearance of an English village. *Page 444 
The new entrance structure is described in the answer as follows: "is a frame structure, approximately 40 ft. in width by 60 ft. in length, extending toward the ocean boardwalk, and 22 ft. in height, with an addition on either side thereof 17 1/2 ft. in width and 12 ft. in height, with two door entrances or openings leading from the entrance structure into the ocean end of the theatre building, at floor level of said building."
This entire structure is supported on approximately one hundred and fifty pilings jetted into the sand, as is the custom in the erection of buildings along the ocean front.
The entrance structure is built into and forms a part of the old theatre building and as to its outer appearance, constitutes an integral part thereof. The general construction is the same as the old building. The exterior is corrugated iron attached to wooden uprights. The floor is on the level and connected with the interior floor. The roof is merged into the old building.
It is true that this new entrance structure may be torn down or otherwise removed by separating it from the old structure and that that structure may be made to look as before by proper repairs. It is also true that if this is done there would be removed the front entrance, the lobby, the projection room, lavatories, balcony, c.
It is also true that by proper methods all the improvements to the interior could be removed and by like methods the old theatre building restored to its former state, i.e., front entrance landward from the boardwalk and the rear facing the boardwalk.
The defendant expresses willingness and desire to remove the entrance structure and restore that portion of the old building connected thereby to its original state, at the same time disclaiming any desire to remove the interior alterations, such as floors, c. There is no question but that the landlord mortgagor is entirely in sympathy with the tenant.
It is obvious that the question for determination is not what the tenant is willing to do in the restoration of the building after removal of the entrance structure, but whether or not this structure is a permanent erection so as to have *Page 445 
become a part of the freehold and subject to the lien of the mortgage.
My finding of fact is that notwithstanding the attitude of the defendants, mortgagor and lessee, as now expressed, they, by the very terms of the written lease of April aforesaid, predetermined that the entrance structure should not be considered as a removable trade fixture, but as a permanent addition to the land the buildings thereon erected.
The aforesaid lease, in the first paragraph, provides for a demise of the "Doughty Theatre, situate in the Doughty Theatre Building * * * together with sufficient space necessary on the adjoining vacant lot oceanward, to erect a new additionalstructure to said theatre and a new entrance and exit to and fromsaid theatre, for the exclusive purpose and purposes of said theatre and according and in conformance to and with the planssubmitted by the lessee and approved by the lessor." The answer of the defendant is "that said structure was built pursuant to plans and specifications previously agreed upon and approved by the owner and this defendant."
In view of the answer aforesaid and notwithstanding an attempt to contradict it, the court finds that the so-called entrance structure was built and erected in accordance with the terms of the lease, as heretofore quoted.
The lease further provides, in paragraph 2: "At the rent or sum of Thirty-one Thousand ($31,000.00) Dollars and other valuableconsideration, same being the alterations and improvementsaccording to plans submitted and heretofore and herein agreedupon, repairs, upkeep, c., as hereinafter set forth."
The lease further provides, in paragraph 13, that the lessee, "at the expiration of said term, to yield up and surrender possession thereof, together with the improvements therein andthereon and without any cost to the party of the first part."
We have, then, under the terms of the lease, a provision that the tenant will construct the entrance structure in accordance with the plans and specifications, and the further fact that in pursuance thereof it did so construct and erect said entrance structure, and we find that the consideration *Page 446 
of the lease was a rental of $31,000 and other valuableconsideration and that the further valuable consideration referred to in the lease, as agreed between the parties thereto, was "the alterations and improvements, according to plans," together with the further provision that at the expiration of the lease the tenant would surrender to the landlord "the improvements therein and thereon."
It seems to the court that under a plain reading of an unambiguous contract, that the entrance structure was erected by the tenant in accordance with the plans approved by the lessor and that instead of paying an additional sum in dollars as rent, the tenant erected the entrance structure and agreed that it should be the landlord's at the expiration of the term.
It is argued, however, that the entrance structure may not be construed as having been erected under the provisions of the consideration clause, but that it was a distinct and separate matter therefrom, and that the consideration clause does not refer to the entrance structure when it uses the words "alterations and improvements" because it is argued that the entrance structure is designated in paragraph 1 as a "new additional structure." Defendants say that the word "additional" has an entirely different meaning as used in clause 1 than either the word "alterations" or "improvements" as used in the consideration clause 2.
It is obvious that this argument is not entitled to prevail. The so-called "additional structure" was erected in accordance with plans and specifications, as is admitted by the answer, and constitutes the "improvements according to plans submitted," as set forth in the consideration clause. The entire lease is devoid of any plan for work to be done in connection with the alterations, additions or improvements to the theatre building with the aid of plans or specifications other than the plans and specifications to be used in connection with the erection of the entrance structure.
In paragraph 3, providing for the payment of consideration, it is provided that alterations "and improvements as per approved plans" are to be completed before summer season. *Page 447 
The "alterations" were to the inside of the theatre building,i.e., changing the location of the screen, projection room, lobby, lavatories, sloping the floor level, c. The "improvements" were the entrance structure, as per plans.
It is further argued that when the parties to the lease provided for the surrender of possession "together with the improvements therein and thereon" it was meant the improvements within the theatre building itself and not the entrance structure. If that construction were true it would not have been necessary to provide for the surrender of the improvements thereon, but the provision would have been "with the improvements therein" eliminating "thereon."
It seems to me to be obvious that when the parties agreed for the surrender of the improvements it was provided that that portion of the rent which was comprehended by the "alterations and improvements" was intended not only to be given to the landlord at the time of the execution of the lease as a part of the consideration therefor, but that it was to remain the landlord's after its expiration.
It certainly may not be argued that the tenant was to pay, by way of improvements, a part of the consideration for the lease and that the lessee was to get that part of the consideration back at the end of the term.
Was "additional structure" to be erected "for the exclusive purpose and purposes of said theatre" as provided in clause 1 aforesaid an "improvement" as contemplated in clause 2? It has been heretofore observed that it was erected as per plans. Spoken of in later clauses, does the word "improvement" comprehend an "addition?"
Webster defines the word "improvements" to be a "valuable addition, or betterment, as a building * * * on land."
In Ames v. Trenton Brewing Co., 56 N.J. Eq. 309;38 Atl. Rep. 858, Vice-Chancellor Grey (at p. 316), said:
"The word `improvements' used in the lease is undoubtedly one of wide signification. * * * The thing done which is held to be an improvement is done to the realty. The word itself conveys this meaning. In order that there might be an improvement there must previously have been something to be improved. * * * The improvement consisted in the *Page 448 
amelioration or bettering of those premises. * * * The improvements, to be within the provision, must, when made, savor of the realty."
In the above case the vice-chancellor commented on the fact that "whether they were or were not improvements in the sense that they were betterings of the realty must depend upon their essential nature and the action and intention of the lessee in relating them to the demised premises; the opinions of the witnesses as to the result are of little weight in the matter."
In Parker v. Wulstein, 48 N.J. Eq. 94; 61 Atl. Rep. 623,
Vice-Chancellor Bird said (at p. 96):
"The word `improvement' may be said to comprehend everything that tends to add to the value or convenience of a building or a place of business, whether it be a store, manufacturing establishment, warehouse or farming premises. * * * It necessarily includes much more than the term `fixtures.' Indeed, * * * it is difficult to conceive any additions made to a building by a tenant for his own convenience in the conduct of the business which may not properly be included in the term `improvements.'"
In Fortescue v. Bowler, 55 N.J. Eq. 741; 38 Atl. Rep. 445,
Vice-Chancellor Grey's reasonings and pronouncements are applicable to the facts in this case. Here, as there, building materials have been wrought into a structure annexed to and made a part of the old theatre building and resting on pilings sunk into the sand. Here, as there, the tenant would be willing to restore the old theatre building to its original appearance after the removal of the entrance structure, but as said by Vice-Chancellor Grey in that case:
"He may be entirely willing to repair the damage caused by the removal, but that is not the question. The point under consideration is not the securing to the complainant what the defendant offers to give — a restoration of the premises to their original condition — but whether or not this court ought to restrain the defendant from taking away what, under the circumstances of this case, was a permanent erection and became a part of the complainant's property." *Page 449 
In that case the vice-chancellor held that the addition made by the tenant was not a trade fixture but was a permanent addition to the real estate, and said:
"Another element in the case indicates that this addition has become part of the realty, and that is the use for which the new building was erected, and its relation in this respect to the old one. The use for which the addition was made was a use which was wholly valueless without the continued use of the original structure. The whole building was used as a hardware store. The new erection was, in fact, an extension of the old one, and valuable only when used in connection with and as a part of the original structure, making of both a complete hardware store. It was not such an addition as a bellows, or an anvil in a blacksmith shop, for use in carrying on a trade, it was a part of the original structure itself, and it could not be used without it, nor could the original structure be, after the change, used without the addition. This merger of the use of the two structures into one, whereby both were coincidently and dependently used for the same purpose, is an additional reason which leads me to conclude that the extension was made not as a trade fixture, but as an enlargement of the building then on the premises, thus becoming a part of the realty."
It is obvious in the present case that the new entrance structure is merely an extension of the present front of the old theatre building and that it is valuable only when used in connection with the old building and that the old and the new buildings make one complete theatre building, all of it erected on pilings.
It would seem to me to be unnecessary, in view of what has been heretofore said, to discuss the so-called institutional theory (Smyth Sales Corp. v. Norfolk Building and Loan Association,116 N.J. Law 293; 184 Atl. Rep. 204), or to discuss its applicability to the relation existing between landlord and tenant. Surely if it is applicable defendant lessee could not prevail.
Decree for complainant. *Page 450