No. 80-426

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

———————————————

KENNETH OVERCAST,

Plaintiff and Respondent,

-vs-

LILA AKRA & BETTY ACHER, as Trustees
of the Estate of EFFIE C. McGHUEY,

Defendants and Appellants.

———————————————

Appeal from: District Court of the Twelfth Judicial District,
In and for the County of Blaine, The Honorable
LeRoy McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

Burns, Solem & MacKenzie, Chinook, Montana
Morrison, Ettien & Barron, Havre, Montana

For Respondent:

W. Arthur Graham, Missoula, Montana

———————————————

Submitted on Briefs: May 1, 1981

Decided: March 25, 1982

Filed: MAR 25 1982

Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The defendant lessors appeal from a jury verdict and judgment of the Blaine County District Court in which they were found to owe the lessee $20,000 as payment for removable and nonremovable improvements the lessee had placed on the farm during the period of his lease. The jury wrote on its own verdict form that "[w]e also award Mr. Overcast the right to remove his two grain bins, Powder River Gate, and four stock tanks."

The lessors raise several issues as grounds for reversal, but we recite only what we consider to be the dispositive issues. We reverse and grant a new trial for several reasons. First, the trial court erred by permitting the jury to consider the costs of nonremovable improvements, although it is demonstrably clear that at the time the lease was signed, the parties did not contemplate recovery for such permanent improvements. Second, the trial court erred by allowing the jury to consider costs incurred by the lessee for seed, fertilizer, and fence maintenance, although the lease specifically stated that these costs would be borne by the lessee. Third, the trial court erred in permitting the jury to consider the theory of unjust enrichment as a permissible method of compensating the lessee for the improvements he made to the land, although this theory of recovery was neither pleaded, nor supported by the evidence.

In March 1974, Kenneth Overcast (the lessee), renewed a five year lease of the farm land involved. At the lease renewal time, the lessor, Effie C. McGhuey, was somewhat incapacitated and her daughters, Lila Akra and Betty Acher, negotiated the lease on behalf of their mother. The renewal

agreement was, in substance, the same as the previous five year lease, and provided that the lessee would pay an annual rent of $2,500. Two clauses of the renewed lease are especially important in this lawsuit--the clause relating to operating costs (which was identical to the clause in the first five year lease) and the clause relating to maintenance and improvements (which was a new clause).

The clause relating to operating costs stated:

"5. OPERATING COSTS: The Lessee shall pay all of the costs and expenses of all types in the operation of farming leased lands, including but not being limited to: expenses for seed, chemicals, sprays, machinery, repairs, labor, fuels and any improvements that Lessee so desires to make upon said premises. Provided, however, that Lessee shall have the right upon termination of this Lease, to remove any improvements that he has made in connection with the premises, or to sell the same to the Lessor, at his cost, to the Lessor, or to her heirs or assigns, including any individual who may purchase said property from the Lessor. In addition, all utilities furnished to the premises during the term of this Lease shall be the responsibility of and be paid by the Lessee."
(Emphasis added.)

The emphasized sentence in this paragraph was added after the lessee had requested the lessor to make certain improvements but the lessor had declined because she could not afford to make them. The undisputed evidence shows that the daughters and their attorney met with the lessee and added this sentence at the lessee's insistence after he told them that he planned to erect some grain bins and water tanks on the farm, and that he wanted either to remove them at the end of the lease term or to be paid for them. The lessee confirmed that the grain bins, and possibly, the water tanks were the only improvements discussed before the signing of the renewal lease.

The clause relating to maintenance and improvements stated:

-3-

"6. MAINTENANCE OF IMPROVEMENTS: The Lessee shall keep and maintain any structures, improvements and fences located on the leased land in substantially the same condition as they now are, reasonable wear and tear excepted. The cost of furnishing materials and labor necessary for the repairs and for maintaining the fences on the premises, shall be borne by the Lessee."

The lessee hoped that he might someday purchase this farm, but this prospect was not discussed by the parties at the time the renewal lease was signed. Shortly after the renewal lease was signed, the lessor was confined to a rest home and her daughters were appointed trustees of her real property. When the second five year lease term was due to expire, the daughters offered to sell the farm to the lessee but the terms of the sale were apparently too high for him. He told the daughters he could not buy the farm at that price, but then asked them to offset the purchase price against the value of the improvements which he claimed he had made to the land during the term of the lease. The daughters refused and the lessee immediately demanded that he be paid his costs for the improvements--removable and nonremovable. They refused, and the lessee filed suit, claiming he was entitled to recover costs for the following improvements:

| | |
|---|---|
| Install Drains and Culverts | $1,090.00 |
| Construction of 2 Grain Bins | 3,500.00 |
| Construction of Fence | 1,015.00 |
| Install Water Tanks and Lines | 1,300.00 |
| Construction of Bridge, Pens and Chute | 1,500.00 |
| Construction of Root Cellar | 350.00 |
| Floodlights | 400.00 |
| Land Leveling and Raised Ditch | 24,525.00 |
| Alfalfa and Grass Seeding | 1,814.00 |

Several questions were presented at trial regarding lease paragraphs 5 and 6, supra. One of the main questions was whether the parties, in drafting the improvements clause, had contemplated nonremovable as well as removable improvements. The lessor contended that the lessee could recover his costs for only removable improvements, and the lessee contended

-4-

that he could recover his costs for both removable and nonremovable improvements. The second sentence of paragraph 5 states:

> ". . . Provided, however, that Lessee shall have the right upon termination of this Lease, to remove any improvements that he has made in connection with the premises, or to sell the same to the Lessor, at his cost, to the Lessor . . . ." (Emphasis added.)

Needless to say, each party interprets this clause to his advantage. The lessors contend that the disjunctive "or" refers back only to improvements that are removable, and the lessee contends that he was given the broader right to remove "any improvements" or to sell them to the lessors. As to the nonremovable improvements, he therefore argues that he can compel the lessor to pay for them at his cost.

The trial court failed to rule as a matter of law upon whether the jury could consider whether the parties contemplated nonremovable as well as removable improvements. The trial court simply allowed the lessee to testify about the costs he incurred in making both nonpermanent and permanent improvements. In addition, the trial court also instructed the jury (Instruction 31) that it could award the lessee compensation based upon not just his incurred costs, but also upon the increased value of the farm caused by the improvements. In effect, the jury was told that it could find damages based on the theory of unjust enrichment.

Assuming that this clause is ambiguous and therefore in need of extrinsic evidence to explain its terms, the lessee did not sustain his burden of proof in showing that the parties contemplated nonremovable improvements; he at no time testified that the parties contemplated payment for nonremovable improvements at the end of the lease term. In fact, he agreed with the lessors' testimony that the grain

-5-

bins and the water tanks--obviously removable improvements--
in all probability were the only improvements the parties
discussed when he insisted that the improvements clause be
inserted into the lease. The lessors, on the other hand,
testified that nonremovable improvements were not in the
parties' contemplation when this improvements clause was
discussed and the renewal lease signed. We therefore hold
that the parties contemplated only removable improvements,
and the lessee is entitled to recover his costs for only
those removable improvements not specifically excluded by
the terms of the lease.

The lessee cannot, therefore, recover for costs of
seeding and fertilizing. Paragraph 5 of the lease states
that the lessee is to bear the costs of seed and fertilizer
(chemicals). The lessee, however, sought to avoid the application
of this clause by relying on the improvements clause of the
lease, contending that he was entitled to $2,000 for seeding
and fertilizing because they constituted the addition of
permanent improvements to the value of the land. Assuming
this to be the case, the lessee nonetheless cannot recover
for these costs because we hold that the parties did not
contemplate nonremovable improvements when the improvements
clause was inserted into the lease.

The same reasoning applies to the lessee's claimed
costs for fencing. Paragraph 6 of the lease requires the
lessee to bear the costs for maintaining all fencing.
Although the lessee eventually claimed $860 for fencing
costs, the testimony shows that most of those costs were for
repairs rather than for the erection of fences where none
had been before. Again, the trial court should have ruled as
a matter of law that fence repair costs were to be born by

-6-

the lessee. Assuming that the lessee made some fencing improvements that would not be classified as repairs, he still could not recover their costs because we hold that the parties contemplated only removable improvements. He presented no evidence that the fences were removable, nor did he present any evidence of the costs attributable to the erection of fences that would not be classified as fence repairs.

This brings us to the largest claim--that the lessee is entitled to $24,525 for land leveling and the raising of a ditch. Because these are also nonremovable improvements, the lessee, as we have already held, cannot recover their costs because the parties did not contemplate nonremovable improvements. We note, furthermore, that the lessee presented almost no records of his costs incurred in leveling the land and raising the ditch. Most of this claim was for the 870 man-hours (at $25 per hour) it allegedly took the lessee to level the land and raise the ditch. Yet, the lease does not permit a recoupment of expenses based on the number of hours spent on improving the property. And the record is also silent about whether the land leveling and ditch raising actually increased the value of the farm, and, if so, by what value. The trial record does not give the slightest indication that the parties contemplated payment at the end of the lease terms for land leveling or ditch raising as a permanent improvement. It is abundantly clear, therefore, that the lessee should not be permitted to recover for land leveling and ditch raising.

Additional factors bear on our decision that the parties did not, as a matter of law, contemplate nonremovable improvements within the scope of the lease's improvement clause. When the lease was renewed, the lessee knew that the lessor

-7-

could not herself afford to make any improvements, and there is no evidence to indicate that she would be in any better position at the end of the lease term to pay for any improvements he made. For example, the lessor had specifically rejected the lessee's request that she reroof a lean-to on the barn.

Even though the lessee claimed a right to recover costs for many improvements, he failed to present convincing evidence that he had increased the value of the land by making these improvements. He presented little or no evidence, for example, that the land leveling, the ditch raising, the fencing repairs, repairs of the building, or the seeding or fertilizing, actually increased the value of the land. An improvement must be permanent and it must enhance the value of the premises for general purposes. 41 Am.Jur.2d Improvements § 1; 42 C.J.S. Improvements § 1. In fact, if the tenant has not made the premises more valuable to the owner, the owner has no obligation to make compensation, however great the expenditures may have been. 41 Am.Jur.2d Improvements § 23. Here the lessee not only failed to place a monetary figure on the value of the land as increased by his improvements, but he also presented no evidence that the improvements actually increased the value of the land. For example, no figures were presented to the jury that the claimed $22,000 spent for land leveling increased the value of the land in any amount. The same is true of the claimed fencing improvements. This lack of evidence left the jury with no basis to determine whether the value of the land had been increased.

Nor can we ignore the fact that the lessee kept poor records or no records at all of his claimed expenditures. He presented the jury with few bills, receipts, or cancelled

-8-

checks which would tend to prove that his claimed costs were actually expended. Instead, the jury had only the lessee's word that he spent so much money in making each of his claimed improvements. While this method of proof is not impermissible in an appropriate case, here the lessee gave no explanation for why he had no written evidence of his expended costs. If he had believed that he would be entitled to recover all these expended costs at the end of the lease term, the likelihood is that he would have kept better records to support his claims.

Finally, the trial court erred by permitting the jury to base a verdict on the theory of unjust enrichment--a theory which was neither pleaded nor proved. The jury was instructed that if the lessee expended money and labor on the strength of an agreement which later became unenforceable, he could recover either the cost or the value of the improvements he had placed on the land. This instruction was not applicable under the lessee's theory of recovery, for the lessee was no longer relying on the written lease, which for some reason, became unenforceable. Yet, he and the lessors necessarily relied on the terms of the lease in their other arguments although each had different interpretations of those terms.

The lessee argues not only that the instruction was proper, but also that it was harmless error because the jury did not return a verdict based on the claimed theory of unjust enrichment. The lessee has not explained how he knows which theory the jury used in arriving at its verdict. It is clear to us that this instruction could have confused the jury on the extent of the lessee's right to recover. It is

possible that the jury decided the lessors' interpretation of the lease to be the correct one. And it is also possible that the jury then decided that although the lessee could not enforce the lease according to his own interpretation, he could nonetheless recover on the theory of unjust enrichment. Because the jury was instructed in this manner, under whatever interpretation of the lease it adopted, the lessee could not lose. If the jury believed the lessee's interpretation that he was entitled to recover for all improvements --removable and nonremovable--it could have decided the case on the basis of the lease itself, but if the jury believed the lessors' interpretation, it nonetheless could have ruled in the lessee's favor on the basis of the unjust enrichment instruction. We cannot, under these circumstances, determine that Instruction 31 was harmless error.

The trial court is instructed to hold a new trial and rule as a matter of law whether each of the lessee's claimed improvements is of a permanent nature. Where, however, the nature of the claimed improvement is not so clear that only one conclusion can be reached, the question should be left for the jury with instructions to specifically decide that issue on their verdict.

We vacate the District Court's judgment and order a new trial consistent with this opinion.

Daniel J. Shea
Justice

We Concur:

------------------------------
Chief Justice

-10-

_John Conway Harrison_

_Jack B Morrison_

_John C. Sheehy_
           Justices

I concur in the result.

                          _Frank I. Haswell_
                            Chief Justice