No. 84-50

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

MELVYN G. STEVENSON,

        Plaintiff and Respondent,

    -vs-

CLARENCE R. OWEN and
MARI A. OWEN,

        Defendants and Appellants,

    and

MARKO MICHUNOVICH,

        Defendant and Respondent.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
              In and for the County of Carbon,
              The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

        A.L. Craddock, Red Lodge, Montana

      For Respondents:

        Towe, Ball, Enright and Mackey; Donald D. Sommerfeld,
        Billings, Montana

Submitted on Briefs:  May 24, 1984
Decided:  September 10, 1984

Filed:  SEP 10 1984

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

In an action to quiet title, the District Court of the Thirteenth Judicial District in the County of Carbon entered a judgment ordering defendants Owens to vacate the premises. Owens appeal.

Respondent Stevenson brought this action to quiet title in Tract 1, Certificate of Survey No. 1055, Carbon County, Montana as to any claim, right, estate, title, lien or interest of appellants Owens and respondent Michunovich.

The Owens, in a counterclaim against Stevenson and a cross-claim against Michunovich, sought relief of specific performance of contract for deed, money damages, foreclosure of purchaser's and mechanic's liens or, in the alternative, for reformation of contract.

June 15, 1983 the matter was tried before the court sitting without a jury. The October 17 judgment favoring respondent Stevenson ordered appellants Owens to vacate the premises within thirty days of the entry of judgment. Owen's cross-claim against Michunovich was denied.

Michunovich purchased Tract 1, Certificate of Survey No. 1055, consisting of 25.369 acres located in Carbon County, from the Brangers. The transaction was consummated in a contract for deed dated August 15, 1978, referred to as the "Branger contract".

On May 5, 1980 Michunovich entered into a contract for deed with Owens, the "Owen contract", whereby Owens agreed to purchase a 1.7 acre parcel carved out of the 25.369 acres being purchased by Michunovich under the "Branger contract". Terms of the "Owen contract" provided for a $45,000 purchase price payable $12,000 down, including $100 earnest money, the balance of $33,000 to be amortized in monthly installments of $302.76 through June 1, 1985 when the outstanding balance became due and payable. At closing, Owen's $12,000 down payment, less real estate commission and minimal costs, was

2

paid to and received by Michunovich. Pursuant to the contract, Owens took possession of the property on May 5, 1980.

Escrow provisions in the "Owen contract" provided that the parties place all documents in escrow with the Montana Bank of Red Lodge. Payments were to be made to the escrow agent. An escrow account was never opened. Owens made no monthly payments under the contract, although Owens maintain they were, at all times, ready and willing to bring the contract payments current.

Paragraph XVIII of the "Owen contract" provided:

"The parties agree that a certificate of survey prepared by a registered land surveyor eligible for recording with the Carbon County Clerk and Recorder is essential to the effective conveyance of the real property sold hereunder and that Seller shall pay all costs and expenses incurred in connection with the survey and the recording thereof. At such time as the sanitary restrictions of the Department of Health and Environmental Sciences of the State of Montana have been removed, and the certificate of survey has been recorded, the recordable legal descriptions will be attached to the deeds and Abstract of Agreement."

Michunovich had a certificate of survey prepared by a qualified surveyor. He failed to file the certificate of survey on the 1.7 acre parcel because he did not satisfy the sanitary restrictions as required by state law for recordation.

Michunovich was also responsible for obtaining a deed release from his sellers, the Brangers, for the 1.7 acres being purchased by the Owens. The contract provision entitled Paragraph XIX: "Existing Encumbrances" provided in pertinent part:

". . . Seller agrees that within thirty days after the execution of this Contract, he will make every reasonable effort to secure from David H. Branger and Marjorie A. Branger an agreement which will guaranty Buyer herein delivery of a warranty deed, free and clear of all liens and encumbrances, upon payment in full of all sums due under this Contract. In the event that Seller is unable to secure such agreement, the down payment provided for in Schedule B shall be refunded to Buyer. And this agreement shall then be void."

3

The final phrase, "and this agreement shall then be void", was hand written on the face of the typewritten contract following the word "Buyer", and initialled by all parties. Brangers refused to deliver a warranty deed.

Michunovich defaulted on the "Branger contract". On November 28, 1980 the Brangers filed suit in District Court against Michunovich alleging breach of contract for his default on payments.

Seven months after the execution of the "Owen contract" dated May 5, 1980, Michunovich served Owens with a "Notice of Termination" dated December 5, 1980. The Notice informed the Owens that: (1) Michunovich was unable to secure a deed release agreement from the Brangers; (2) the Owen Contract for Deed was terminated and the down payment under that contract would be refunded to the Owens within thirty days after receipt of this Notice; and, (3) the Owens shall surrender possession of the property and any improvements made thereon. The down payment was never refunded and the Owens refused to surrender possession.

The "Notice" provision of the "Owen contract" required all notices given by either party to be in writing and delivered personally to the parties to be notified or sent by certified or registered mail to addresses specifically listed.

Provisions for termination of the contract are established in paragraph VII, DEFAULT, as follows:

"Should any default of the Buyer remain uncured for more than thirty days after written notice thereof to Buyer, then the whole of the payments due hereunder shall become due and payable within sixty days after said initial thirty day period, and upon nonpayment thereof, Seller may terminate this Contract without further notice. Said agreement shall be deemed terminated upon receipt by escrow agent of Seller's written, sworn, statement describing said default and the recording of a duplicate original thereof in the office of the Carbon County Clerk and Recorder. In the event of such termination, Buyer agrees, on demand, to surrender possession of said property and any improvements thereon, immediately and peaceably; and Seller shall be entitled to retain all payments

4

made hereunder as reasonable rental for the use of said property and as liquidated damages. The remedy herein given to Seller shall not be exclusive of any other remedy, and the Seller may use any appropriate remedy to enforce compliance with the provisions of this Contract and to enforce collection from Buyer of any amounts due Seller, without accelerating the maturity of the unpaid balance or terminating the Contract all without prejudice to the privilege of Seller to subsequently accelerate the maturity of the balance or to terminate the Contract."

February 5, 1981, Michunovich assigned all of his right, title and interest in and to the "Branger contract" to Melvyn G. Stevenson, with the Branger's consent. Since Stevenson was able to bring the Branger-Michunovich contract current, the Brangers stipulated to a dismissal with prejudice of their lawsuit initiated against Michunovich.

The Owens recorded a "Notice of Interest and Claim of Lien" on February 9, 1981 in Carbon County. They filed a "Purchaser's Lien" relative to the $12,000 down payment and a "Mechanic's Lien" for the labor and materials they invested in improvements to the property during their occupancy. No clause in the "Owen contract" prohibited the construction of any improvements on the property. At no time did Michunovich require that the Owens cease making such improvements.

A notice dated March 12, 1981 was served by Stevenson and Michunovich upon the Owens alleging Owen's default. No written, sworn statement by either Michunovich or Stevenson describing the default, as required by the "Owen contract", was ever recorded in the office of the Carbon County Clerk and Recorder.

Stevenson commenced the present action on August 5, 1981 to clarify title to the 25-acre tract of land, to seek judicial termination of the Michunovich-Owen contract and to seek judicial determination of the damages which Stevenson suffered as a result of the Owen's refusal to peaceably vacate the premises.

At the date of this appeal, the Owens have refused to peacefully surrender possession and have failed to pay a

reasonable rent for the use of the premises during their occupancy.

The district court entered judgment which provided:

"(1) That the $12,000.00 down payment paid by Defendants Owens shall be used as an offset against the reasonable monthly rental of $302.76 per month due from Defendants Owens to Plaintiff Stevenson from and after June 1, 1980.

"(2) That Defendants Owens are not entitled to the value of any improvements which they claim were made to the property.

"(3) That the liens filed by Defendants Owens are without basis and, by this Judgment, are extinguished; and

"(4) That Defendants Owens are not entitled to possession of the property and must vacate the premises within 30 days of the entry of this Judgment."

The judgment does not specifically address the contract between Owens and Michunovich, subsequently assigned to Stevenson. However, the trial court's memorandum which accompanies the judgment shows the trial court intended to find the contract was terminated when Michunovich served Owens with a "Notice of Termination" dated December 5, 1980. Although there is no conclusion of law or judgment which legally formalizes Michunivoch's action, such is necessarily the implication of the court's judgment directing Owens to relinquish possession within thirty days of the entry of judgment.

Numerous issues have been raised by the parties. We find three issues dispositive of this appeal and the resolution of those issues requires a new trial.

The court erred in making the following determinations:

1. In finding that the "Owen contract" was terminated by the notice served December 5, 1980.

2. In directing an offset against the down payment of a reasonable monthly rental in the amount of $302.76 per month in the absence of evidence regarding reasonable monthly rental value.

6

3. In holding that Owens were not entitled to the value of improvements made upon the property.

Michunovich sought to terminate the "Owen contract" pursuant to the provisions of paragraph XIX which provided that: "In the event that Seller is unable to secure such agreement, the down payment provided for in Schedule B shall be refunded to Buyer. And this agreement shall <u>then</u> be void." (emphasis supplied)

Return of the down payment was specifically provided as a condition which had to be met before the agreement would be void. The down payment was not returned. The trial court erred in finding Michunovich's notice terminated the contract.

Upon remand the issue of whether Stevenson's default notice effectively terminated the "Owen contract" is an issue that will have to be resolved. If it is determined that the "Owen contract" was terminated by virtue of Owens' default in failing to make monthly payments, then attention must be directed to the issues of reasonable rental value and value of improvements. If it is determined that the default notice was ineffective and that Owens are entitled to possession, those issues need not be reached.

For guidance, we will briefly discuss our reasons for determining that the trial court erred respecting offset of reasonable rental value against the down payment, and in denying the Owens value of improvements made.

If it be determined that Owens were in default and effectively terminated by the notice given by Stevenson dated March 12, 1981, then the Owens would be liable for the reasonable rental value of the property during the period of their holding. That figure may or may not be the amount provided for as a monthly installment payment in the contract. Independent evidence must be produced showing the

7

reasonable rental value of the premises. Mecham v. Nelson (1969), 92 Idaho 783, 451 P.2d 529, 533.

The issue of whether Owens are entitled to the reasonable value of improvements made, should it be determined that he must vacate the premises, is controlled by section 70-28-110, MCA, which provides:

"When damages are claimed for withholding the property recovered upon which permanent improvements have been made by a defendant or those under whom he claims, holding under color of title adversely to the claim of plaintiff, in good faith, the value of such improvements must be allowed as setoff against such damage."

Interpreting a similar statute, the Oregon Court of Appeals stated:

"The allowance of a recovery from the owner for the value of improvements mistakenly put on the owner's premises is an application of the equitable rule which prevents unjust enrichment." Roesch v. Wachter (1980), 48 Or.App. 893, 618 P.2d 448, 451.

This Court has defined "improvement" as:

"An improvment must be permanent and it must enhance the value of the premises for general purposes. 41 Am.Jur.2d Improvements §1." Overcast v. Akra (Mont. 1982), 642 P.2d 1058, 1062.

Pursuant to section 70-28-110, MCA, one having possession must establish two elements before recovery for improvements can be made: (1) that possession was retained under color of title; and, (2) that the improvements were placed on the property in good faith.

"Color of title" is defined as:

"Color of title has reference to something which has the appearance or gives the semblance of title but is not such in fact . . ." Munkres v. Chatmon (Kan.App. 1979), 599 P.2d 314, 316.

Upon retrial a factual determination must be made as to whether Owens placed the improvements on the property in good faith. Owens certainly held under color of title. Here the trial court may have been influenced by its erroneous holding that Owens' interest in the property terminated pursuant to Michunovich's notice of May 5, 1980. Since Owens were rightfully in possession subsequent to that date, the issue

8

of "good faith" on Owens' part in making improvements will have to be reevaluated.

We have found it unnecessary to treat the validity of Owens' counterclaim. If it is determined that Owens were not in default, or that the Stevenson default notice was ineffective, then it follows that Owens' counterclaim will have to be addressed.

The judgment of the trial court is vacated. The case is remanded for a new trial in accordance with the views herein expressed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices