

# THE ATTORNEY GENERAL
## OF TEXAS

May 13, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable D.C. Jim Dozier
Montgomery County Attorney
Courthouse
Conroe, Texas    77301

Opinion No. JM-902

Re: What constitutes an "improvement district" for purposes of article 1667, V.T.C.S.  (RQ-1253)

Dear Mr. Dozier:

You have asked questions concerning article 1667, V.T.C.S. This statute, enacted in 1915 and most recently amended in 1941, provides in relevant part:

> In all counties which have or may have a County Auditor and containing a population of [110,000] or more . . . and in which counties there exists or in which there may be created any improvement, navigation, drainage, or road or irrigation district, or any other character of district having for its purpose the expenditure of public funds for improvement purposes, or for improvements of any kind whether derived from the issuance of bonds or through any character of special assessment, the County Auditor shall exercise such control over the finances of said district as hereinafter provided. [See V.T.C.S. art. 1668 et seq.]

You expressed concern about the effect of this statute on certain districts in Montgomery County, which has a population exceeding 110,000. Your letter states:

> We find no clear authority defining the 'improvement districts' to which article 1667, V.T.C.S., on its face applies. Accordingly, we ask the following questions:
>
> 1. What constitutes an 'improvement district' as contemplated by the statute?

2. Is an emergency communication district created pursuant to article 1432e, V.T.C.S., an improvement district subject to the financial control of the county auditor?

3. Is a county hospital district an improvement district subject to the financial control of the county auditor?

4. Is a rural fire prevention district created pursuant to article 2351a-6, V.T.C.S., an improvement district subject to the financial control of the county auditor?

5. Is the county entitled to reimbursement from improvement districts under the financial control of the county auditor for the salaries of such additional assistant auditors as may be required to perform the duties imposed by article 1667?

In answer to your first question, we have found no precise definition of "improvement district" in Texas statutory or case law. However, definitions of "improvement" found elsewhere may be useful.

Black's Law Dictionary (5th ed. 1979) defines an improvement as:

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. . . . An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset.

This definition essentially addresses the subject matter of real estate, land or property. An improvement generally involves a "permanent addition" or "betterment" of real property that enhances its capital value and involves expenditure of labor and money and is designed to make property more useful or valuable. Richview Nursing Home v. Minnesota Department of Public Welfare, 354 N.W.2d 445, 458 (Minn. App. 1984). An improvement must be permanent and it

must enhance the value of the premises for general purposes. Overcase v. Akra, 197 Mont. 76, 642 P.2d 1058, 1062 (1982).

An improvement involves a change in the condition of property or real estate from a lesser developed stage to a more developed stage. Improvement means the state of being improved, especially enhanced in value of excellence. Myra Foundation v. Harvey, 100 N.W.2d 435, 439, (N.D. 1959). In order for an improvement to be made there must previously have been something to be improved. An improvement consists in the amelioration or bettering of certain premises. Provident Mutual Life Insurance Co. of Philadelphia v. Dougherty, 125 N.J. Eq. 442, 6 A.2d 184, 187 (N.J. ch. 1939).

A definition of an improvement district that takes into consideration the legal meaning of "improvement" as it has been traditionally interpreted by the courts will necessarily imply a type of special district that is concerned with the permanent enhancement or betterment of real property to make it more useful or valuable. An improvement district is thus concerned with the enhancement or betterment of real property from a lesser developed stage to a more developed stage. This definition describes the intent and purpose of the various types of special districts that are mentioned in article 1667, V.T.C.S. Navigation, drainage, road and irrigation districts are all basically established in order to enhance the value of land by increasing its usefulness.

The Texas Constitution includes two provisions that pertain to the betterment or enhancement of land through the establishment of special districts. These provisions are found in article III, section 52, and article XVI, section 59. Article III, section 52 generally empowers counties, cities, towns or other political corporations or subdivisions to issue bonds, levy and collect taxes for the following purposes:

> (1) The improvement of rivers, creeks and streams to prevent overflows, and to permit of navigation thereof, or irrigation thereof or in aid of such purposes.

> (2) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof.

> (3) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof.

Tex. Const. art. III, §52(b). This constitutional provision relates to the general improvement of lands. Bonds may be raised by a local government or by a special district.

Article XVI, section 59, of the Texas Constitution specifically deals with the establishment of special districts for conservation and reclamation purposes. It provides that:

> (a) The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

> (b) There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law.

Improvement districts that are established under article III, section 59, and article XVI, section 59, are

classified as "natural resource special districts" by the United States Census Bureau. The Census Bureau has established twelve functional classifications for special districts. These classifications are based on two criteria.

(1) The name of the entity involved which in many instances, such as for housing authorities and hospital districts provide a specific guide. . . .

(2) the function or functions reported as being performed by individual units. . . . (Emphasis added.)

United States Census Bureau of the Census, Census of Governments: 1977, Vol. I, No. 1, Governmental Organization (U.S. Government Printing Office, Washington D.C., 1977), at 5. Using this criteria, the United States Census Bureau has established a classification that includes twelve types of special district. They are as follows:

(1) Natural Resources
Soil Conservation
Drainage
Irrigation, Water Conservation
Flood Control
Other Natural Resources

(2) Fire Prevention

(3) Urban Water Supply

(4) Housing and Urban Renewal

(5) Cemeteries

(6) Sewerage

(7) School Building Authorities

(8) Parks and Recreation

(9) Highways

(10) Hospitals

(11) Libraries

(12) Other Single-Function and Multi-Function
     Districts

Since improvement districts are fundamentally concerned with the amelioration or change in the character of land, they generally fall within the "natural resources" type of special district. Improvement districts serve very distinct functions that are exclusively related to improvements in land. In our opinion, an "improvement district" for purposes of article 1667, V.T.C.S., pertains to a district which is primarily concerned with the enhancement or betterment of the land or other natural resources. Improvement districts are distinguishable from fire prevention, hospital and emergency communications districts.

Fire prevention districts are created under the provisions of article III, section 48-d. This article provides:

> The Legislature shall have the power to provide for the establishment and creation of rural fire prevention districts and to authorize a tax on the ad valorem property situated in said districts. . . .

These districts are created to combat fires in rural areas through the purchase of modern fire-fighting equipment and the hiring of necessary personnel.

Hospital districts are created under the provisions of article XI, section 9, of the Texas Constitution. This article states:

> Sec. 9. The Legislature may by law provide for the creation, establishment, maintenance and operation of hospital districts . . . providing that any district so created shall assume full responsibility for providing medical and hospital care for its needy inhabitants. . . .

Providing medical facilities and services is the primary purpose of a hospital district.

Emergency communication districts are created under the provisions of the Emergency Telephone Number Act, article 1432c of the Business Corporation Code. This act provides:

Sec. 2. It is the purpose of this Act to establish the number 9-1-1 as the primary emergency telephone number of use by certain local governments in this state and to encourage units of local government and combinations of those units of local government to develop and improve emergency communication procedures and facilities in a manner that will make possible the quick response to any person calling the telephone number 9-1-1 seeking police, fire, medical, rescue, and other emergency services.

. . . .

Sec. 5. An emergency communication district may be created as provided by this Act.

There is nothing in the character or function of a hospital, fire prevention or emergency communication district that relates to the enhancement or betterment of land. Their purpose is primarily to provide a distinct service to a select population rather than to make permanent changes to real property or land. Although it can be argued that these districts result in general improvements for the community at large, the courts have not traditionally defined "improvement" in this manner. A definition of "improvement district" that takes into consideration both the legal definition of "improvement" and the United States Census Bureau classification of special districts generally excludes a hospital, fire prevention and emergency communication district from its meaning.

The auditing provisions of article 1672, V.T.C.S., apply to improvement districts and other similar districts that make improvements to land such as navigation, irrigation, drainage and road districts. They do not apply to hospital, fire prevention and emergency communication districts.

Finally, you ask whether a county is entitled to reimbursement by districts for salaries of assistants who aid in the auditing functions performed by the county auditor pursuant to article 1672. As you point out, former article 1673, V.T.C.S. (now repealed), authorized county auditors in counties with a population in excess of 330,000 to apply for assistants to help carry out the duties imposed by article 1667 et seq. No current statute expressly authorizes

assistants for these specific purposes. However, section 84.021 of the Local Government Code provides in part:

> (a) From time to time the county auditor may certify to the district judges a list stating the number of assistants to be appointed, the name, duties, qualifications, and experience of each appointee, and the salary to be paid each appointee. The district judges, after careful consideration of the application for the appointment of the assistants and after inquiry concerning the appointees' qualifications, the positions sought to be filled, and the reasonableness of the requested salaries, shall prepare a list of the appointees that the judges approve and the salary to be paid each. The judges shall certify this list to the commissioners court, which shall order the salaries to be paid on the performance of services and shall appropriate an adequate amount of money for this purpose.

Article 1672, V.T.C.S., provides that county auditors shall receive for their services in auditing the affairs of special districts within article 1667

> such compensation as the commissioners court may prescribe, which shall be paid by the county out of the general fund and repaid to the county by such districts by warrants drawn upon the proper funds of such district. In such counties which have or may have as many as five such districts, the compensation allowed the county auditor for his services on behalf of such districts shall be not less than the sum of twelve hundred dollars per annum, to be prorated among the districts in such proportion as the commissioners court may determine. (Emphasis added.)

Your letter states that article 1672 "does not on its face authorize the payment of such assistants from funds to be reimbursed by the improvement districts." We believe, however, that such authority is at least implicitly conferred by section 84.021 of the Local Government Code in combination with article 1672, V.T.C.S. The former statute permits the hiring of needed assistants, and the latter

authorizes compensation by special districts for the "services" of county auditors in auditing the affairs of such districts. In our opinion, the services contemplated by article 1672 necessarily include the services of needed assistants hired under the authority of section 84.021.

### S U M M A R Y

The provisions of article 1667, V.T.C.S., do not apply to an emergency communication district, a hospital district, or a rural fire prevention district. These districts are not "improvement districts" within the meaning of article 1667, V.T.C.S.

Section 84.021 of the Local Government Code and article 1672, V.T.C.S., entitle a county to reimbursement from special districts for the salaries of such additional assistant auditors as may be required to perform the duties imposed by article 1667.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General