DALE BROWN, Plaintiff and Appellant, v. WARREN L. THORNTON, and GERTRUDE L. THORNTON, Defendants and Respondents, and DALE THORNTON and LILLIAN THORNTON, Intervenors.

No. 11297.
Submitted September 11, 1967. Decided October 10, 1967.
432 P.2d 386.

Robert Hurly (argued), Glasgow, for appellant.

Paul E. Hoffmann, Glasgow, Alexander, Kuenning & Hall, John Hall (argued), Great Falls, for respondents.

Francis Gallagher, Glasgow, for intervenors.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment for the defendant entered

following an order granting a motion for summary judgment. The judgment was entered in the District Court at Glasgow, the Honorable Tom Dignan, District Judge, presiding.

As a result of intervention, there are two sets of parties named "Thornton." The defendants and respondents are Warren L. Thornton, and his wife Gertrude. These will be referred to as "defendants." Dale Thornton, the son of defendants, and his wife Lillian will be referred to as "intervenors." The plaintiff and appellant, Brown, will be referred to as "plaintiff."

The trial court had the pleadings, the depositions of plaintiff and defendant, and certain exhibits before it from which to make its decision. It appears from these documents that the intervenors bought certain real property described in the complaint in about September 1957. Between October 1957, and October 1960, plaintiff sold and delivered building materials and supplies to the intervenors which were used in the construction of improvements on this property.

About April 17, 1959, the intervenors mortgaged the property to defendants to secure loans made to them by defendants in the approximate amount of $45,000.00. Intervenors were unable to meet the mortgage payments, and the property was conveyed by them to defendants about January 31, 1961, at which time the mortgage was satisfied of record.

Shortly before intervenors conveyed the property to defendants, plaintiff filed a mechanic's lien, dated January 26, 1961, upon the property in question for the same amount claimed due from defendants in this action. This mechanic's lien names the intervenors as the owners of the property. Plaintiff admits that no foreclosure action was instituted on this lien and that it has lapsed.

In October 1962, intervenors filed a petition in bankruptcy. Plaintiff received notice of this petition, which included the debt to him that is involved here. At this time plaintiff did not appear in the bankruptcy action, and did not assert that the debt was that of the defendants.

The plaintiff alleges in his complaint, filed February 17, 1965, that defendants were co-owners of the property and had financial interests therein, and had agreed to and did in fact advance funds for the improvements on the property. Plaintiff also alleges, that as owners of the property, defendants received the use and benefit of the materials furnished by the plaintiff and thus must pay to the plaintiff their value.

In his deposition, however, plaintiff says that he "never did check into it to see whether the names [defendants' and intervenors'] were tied up together on the purchase of the land." The evidence that the land was owned solely by intervenors and that the only interest defendants had in the premises was a mortgage to secure a debt is uncontroverted. Concerning ownership of the land the plaintiff further testified:

"Q. What ownership you claim that Warren and Gertrude Thornton [defendants] had in the land described in the complaint? A. All I can say about it is that Dale [intervenor] told me that they were in it together.

"Q. Does this answer apply also to your allegations about the financial interests that the defendants might have had in the described property? A. I would say so."

In regard to the alleged agreement between defendants and plaintiff, that defendants would pay for the materials, the plaintiff stated:

"Q. All right. Now then, Dale [intervenor], in his dealings with you, represented that his father was going to make certain advances to help defray the costs of improvements. Is that right? A. Right.

"Q. Did the father [defendant] ever make any such representations to you? A. I can't say that he did, no.

"Q. Your dealings, then, with reference to the credit arrangements, the deliveries and the purchases here, were conducted with Dale Thornton [intervenor]? A. Dale Thornton.

"Q. And when you are referring here in paragraph 2 [of the complaint], being the paragraph I read, to the agreements

to advance funds, this is a matter in which you relied entirely upon the word of Dale Thornton that his father was backing him up or was, in one way or another interested in the property? A. Well, of course, Dale at one time went to his father and made some arrangements to get me some money, told him he would, which he did. He didn't get me all he was supposed to, but he got me part of it.

"Q. Again, Dale [plaintiff], what you have just related is a fact situation which in turn had been related to you by Dale Thornton. Isn't that true? A. Yes.

"Q. You didn't directly make any financial arrangements with Mr. Warren Thornton [defendant] nor with his wife, Gertrude? A. No.

"Q. In no stage of the proceedings here under complaint did they promise to pay on behalf of their son to you, did they? A. No.

"Q. They didn't represent that they would make payment if you would make a delivery of certain merchandise? A. No.

"Q. This was simply your acceptance of the word of your customer, Dale Thornton? A. Right."

The defendant, Warren Thornton, in his deposition, testified that he made no agreement of any kind with the plaintiff. He said that he loaned money to his son, with a mortgage on the property in question as security, and that there was no agreement as to what his son was to do with the money. A mortgage creates no estate or interest in land. It is simply security for the performance of an act. Federal Land Bank of Spokane v. Green, 108 Mont. 56, 90 P.2d 489; Morrison v. Farmers' & Traders' State Bank, 70 Mont. 146, 225 P. 123.

On the basis of the depositions and exhibits it is clear that defendants did not own the property in question and that they made no agreement with plaintiff to pay for the materials he supplied.

Rule 56(c), M.R.Civ.P., provides that summary judgment shall "be rendered forthwith if the pleadings, depositions, an-

swers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

On a motion for summary judgment the issues presented by the pleadings are not controlling. The court must consider the depositions, answers to interrogatories, admissions on file, oral testimony and exhibits presented, and other similar material to determine whether any of the issues are real and genuine. Hager v. Tandy, 146 Mont. 531, 410 P.2d 447. When the complaint is considered next to the plaintiff's own testimony, it is apparent that there has been no genuine factual issue presented.

Plaintiff argues on appeal that had he been allowed to go to trial he would have presented further proof that defentants were co-owners of the property and made an agreement to pay for the materials. Notice was given and a hearing had before the motion for summary judgment was granted and again notice was given and a hearing had before plaintiff's motion to vacate judgment was denied. Nowhere in the record is there any hint of this further proof. When on the record there is no genuine issue as to any material fact before the court the burden is on the party opposing the motion for summary judgment to present facts of a material and substantial nature raising a genuine issue. The trial judge has no duty to anticipate possible proof that might be offered. To impose such a duty would be to demand clairvoyance not possessed by even a trial judge. Silloway v. Jorgenson, 146 Mont. 307, 406 P.2d 167; Naegeli v. Daniels, 145 Mont. 323, 400 P.2d 896. As to the requirement that there be no genuine issue as to any material fact the granting of the motion for summary judgment was correct.

It remains to be shown that on the facts the defendants are entitled to judgment as a matter of law. The plaintiff testified as to the basis of his cause of action:

"Q. Now, will you please tell me how you understand they

[defendants] became obligated to pay this sum of money to you? A. Well, the main thing is that they reaped the benefits from all them improvements. As far as I can see, the place is pretty much intact, and it was switched over to Mr. Thornton. They rented it and they have got the benefit out of it, are using it."

Also, the plaintiff states in his appeal brief that the action was brought on a *quantum meruit* theory. Since it appears that plaintiff never had any dealings at all with defendants he must rely, as he does, on a contract implied in law or *quasi*-contract. The obligation in such a contract arises not from consent of the parties but from the law of natural justice and equity, and is based on the doctrine of unjust enrichment. Keith v. Kottas, 119 Mont. 98, 172 P.2d 306; French v. County of Lewis & Clark, 87 Mont. 448, 288 P. 455. For a contract to be implied at law on the basis of unjust enrichment the plaintiff must show some element of misconduct or fault of some sort on the part of the defendant, or that he was in some way taken advantage of. See Butler v. Peters, 62 Mont. 381, 205 P. 247; and 17 C.J.S. Contracts § 6, p. 573.

We find no element of misconduct shown on the part of defendants in this action. When defendants took title to the property, in partial repayment of the debt owed to them, the plaintiff had an apparently valid lien on the premises as security. The defendants are not to be blamed because this lien was allowed to lapse. The mere fact that defendants were benefited by plaintiff's materials is not of itself sufficient to require defendants to make restitution therefor. Restatement of the Law of Restitution, § 1(c), p. 13; 17 C.J.S. Contracts § 6, p. 573; Chandler v. Washington Toll Bridge Authority, 17 Wash.2d 591, 137 P.2d 97.

It appears that plaintiff had a contract with intervenors to supply building materials and supplies. He delivered on credit. He cannot now collect from intervenors as the debt is barred in bankruptcy. He received notice of the petition in

bankruptcy but ignored it. Plaintiff also had a remedy against the premises where his goods were used. He has allowed this to lapse. Like the trial court we can see no reason in law or equity why plaintiff should be allowed to recover on a judgment *in personam* against defendants who now own the land.

Having given careful consideration to the entire case, we hold that the judgment of the lower court was correct and it is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, CASTLES and ADAIR concur.