No. 14460

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

ST. JAMES COMMUNITY HOSPITAL,
INC., A MONTANA CORPORATION,

                    Plaintiff and Appellant,

        -vs-

DEPARTMENT OF SOCIAL AND REHABILITATION
SERVICES OF THE STATE OF MONTANA,

                    Defendant and Respondent.

---

Appeal from:   District Court of the First Judicial District,
               Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        Smith Law Firm, Helena, Montana
        Chadwick Smith argued, Helena, Montana
        Corette, Smith & Dean, Butte, Montana

    For Respondent:

        Leaphart Law Firm, Helena, Montana
        W. William Leaphart argued, Helena, Montana

---

                              Submitted:  February 8, 1979

                              Decided: MAY 2 3 1979

Filed:    MAY 2 3 1979

                    _Thomas J. Keaney_
                              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

St. James Community Hospital appeals from an order of the Lewis and Clark County District Court granting summary judgment to the Department of Social and Rehabilitation Services (SRS) in an action for declaratory judgment. The hospital brought suit for a judicial determination that by enacting House Bill 269 (the 1975-1977 legislative appropriations bill), the Montana Legislature intended that Montana hospitals participating in the federal Medicaid program be reimbursed on the basis of their "full and adequate costs" rather than their "reasonable costs" as defined in the federal Medicaid regulations.

The controversy stems from the same contractual relationship recently discussed by this Court in Montana Children's Home et al. v. Dept. of SRS (1979), _____ Mont._____, 592 P.2d 481, 36 St.Rep. 507.

Beginning in 1967, SRS contracted with several Montana hospitals to provide inpatient hospital services to eligible Medicaid recipients. The standard contract between SRS and the hospitals provided that SRS would reimburse the hospitals on the basis of "reasonable costs", which were to be determined at the end of each fiscal year by Blue Cross of Montana, in compliance with federal guidelines. In the interim, however, SRS would reimburse the hospitals on the basis of their "standard charges" to the cash-paying general public with appropriate adjustments between the two standards to be made at the end of the fiscal year. If the federally defined "reasonable costs" were found to be less than "full and adequate costs", the hospitals could negotiate with SRS for a supplemental allowance

bringing the total to "full and adequate costs". The funds for this supplemental allowance were drawn from SRS's general biennium legislative appropriation.

Before the commencement of the ensuing fiscal year, on June 30, 1976, SRS terminated its standard contract with the hospitals and the parties contemporaneously executed an "interim agreement". By this agreement SRS was to pay the hospitals less than their standard charges and the hospitals agreed to continue providing services to Medicaid patients, without being held to "accord and satisfaction". The interim agreement further provided that if the Legislative Interim Finance Committee ruled that the legislative intent behind House Bill 269 (the 1975-1977 appropriations bill) was to pay hospitals "full and adequate costs", then the hospitals would be retroactively reimbursed on that basis.

On July 23, 1976, however, the Interim Finance Committee passed a motion that House Bill 269 was not appropriated to provide funds for supplementation of the federal standard of "reasonable costs". Nonetheless, St. James Community Hospital continued to provide medical services to eligible Medicaid patients. SRS refused to pay more than "reasonable costs" for the medical services, and the hospital therefore started the present lawsuit.

On January 21, 1977, St. James Community Hospital filed a declaratory judgment action seeking a determination that the 1975 Legislature intended the hospitals be paid "full and adequate costs" throughout the entire 1975-1977 biennium, rather than just half of the biennium. Upon cross-motions for summary judgment, the District Court granted summary judgment to SRS and held:

> "House Bill No. 269, 1975, constituted
> an appropriation to the General Fund from
> which the Department of SRS can administer
> the Medicaid program consistently with Title

-3-

XIX of the Social Security Act . . . House
Bill 269 contains absolutely no expression
of legislative intent to pay participating
hospitals 'full and adequate' costs. Payment
of 'full and adequate' costs from 1967-1976
was a matter of contract between SRS and
the hospitals and said contracts are not
evidence of legislative intent."

The hospital presents four issues for our review and we hold against the hospital on each issue. Two of them can be disposed of summarily. The hospital contends that a legislative interim committee has no authority to make a binding determination of legislative intent, but we need not discuss this issue because both sides agree that the committee has no such authority. The hospital also contends that federal law, namely 42 U.S.C. §1396a, et seq., and the appropriate regulations, do not prohibit the reimbursement of hospitals beyond "reasonable costs" as defined by federal law. That, however, would only become a consideration if we determined that the hospital was entitled to compensation beyond "reasonable costs" under the remaining two issues. Since we do not so determine, we do not reach the issue of whether federal law prohibits reimbursement beyond the federally established "reasonable costs" limitations.

The remaining issues are whether the 1975 Legislature intended to appropriate funds for payment of full and adequate costs to the hospitals through the end of the 1975-1977 biennium, and if not, whether SRS is bound nonetheless to pay full and adequate costs under implied contractual and equitable principles to avoid unjust enrichment of SRS.

St. James Community Hospital contends that, by enacting House Bill 269, the Legislature intended providers of Medicaid services in Montana be reimbursed for their "full and adequate costs". The argument is that since full and adequate

-4-

costs were paid for the first year of the 1975-1977 biennium, the Legislature must have intended the same for the second year.

The "full and adequate cost" reimbursements for the first year of the biennium were made pursuant to written contracts between SRS and the hospitals. When SRS terminated its contract with the hospital on June 30, 1976, it thereby ended its contractual obligation to pay full and adequate costs. Absent a contract, there is nothing in the legislative appropriations bill which would allow recovery of full and adequate costs.

House Bill 269 is a general appropriations bill. It does not approve, direct or refer to a continuation of supplemental payments. Nor can such legislative intent be gathered from the circumstances surrounding the enactment of House Bill 269. The circumstances to which the hospital alludes--the contract and its terms--were not the motivating influence behind adoption of the appropriations bill. It would indeed be burdensome to hold that contractors engaged by the State may not be terminated until the end of the biennium unless specifically authorized by the Legislature.

The hospital also claims that payment of less than "full and adequate costs" will result in higher charges to the cash-paying public and that the Legislature could not have intended such an unreasonable or oppressive result. As already stated, there is no indication that the Legislature considered this contract in its biennium appropriation. We note, moreover, that the "reasonable cost" limitation under the federal statute and regulations is designed to encourage "economy, efficiency and quality of care."

-5-

Johnson's Professional Nursing Home v. Weinberger (5th Cir. 1974), 490 F.2d 841, 843. See also, American Medical Association v. Matthews (D.C. Ill. 1977), 429 F.Supp. 1179, 1199. It is not for this Court to modify this general policy by adopting a different standard than that intended by Congress.

The hospital further charges that SRS has taken advantage of the hospitals by using their services from July 1, 1976 through June 30, 1977 knowing full well the hospitals would accept no less than full and adequate cost reimbursement. It contends therefore that the situation gives rise to an implied contract, obligating SRS to pay the full value of the benefits received. An implied contract, however, arises not from the consent of the parties, but from principles of natural justice and equity, based on the doctrine of unjust enrichment. Brown v. Thornton (1967), 150 Mont. 150, 432 P.2d 386. Here, the hospital initially consented to the arrangement. The law will not imply a promise to pay the value of services rendered and accepted if there is a special agreement to pay a particular amount or in a particular manner for the services rendered. 66 Am.Jur.2d Restitution and Implied Contracts §6, 25. In the instant case, Medicaid services were furnished after June 30, 1976 by reason of the "interim agreement". This agreement contemplated that whatever statement of legislative intent the standing committee made, would determine the measure of payment for Medicaid care after June 30, 1976. Even if this Court were to accept the hospital's argument that the committee's adverse ruling did not bind the hospitals and that the matter then had to be litigated, the measure of reimbursement for Medicaid services rendered after June 30, 1976 would depend on the court's determination of legislative intent. The interim

-6-

agreement thus precludes recovery under a theory of quasi-contract.

The judgment of the District Court is affirmed.

/s/ Daniel J. Shea
Justice

We Concur:

/s/ Frank I. Haswell
Chief Justice

/s/ Gene B. Daly

_____

/s/ John C. Sheehy
Justices