No. 14554

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

FLATHEAD HEALTH CENTER et al.,

Plaintiff and Appellant,

-vs-

COUNTY OF FLATHEAD et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Eleventh Judicial District,
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

For Appellant:

Smith Law Firm, Helena, Montana
Hash, Jellison and O'Brien, Kalispell, Montana

For Respondents:

Leaphart Law Firm, Helena, Montana
Randy K. Schwickert, Kalispell, Montana

---

Submitted on briefs: March 21, 1979

Decided: AUG - 9 1979

Filed: AUG - 9 1979

*Thomas J. Kearney*
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Flathead Health Center, doing business as Kalispell Regional Hospital (hereinafter referred to as the "hospital") appeals from an order of the Flathead District Court granting summary judgment to the County of Flathead and the Montana Department of Social and Rehabilitation Services (hereinafter referred to as "County" and "SRS" respectively) in an action for declaratory judgment.

The hospital provides medicaid services, pursuant to Title XIX of the Social Security Act, to qualified persons in the County of Flathead. As compensation for providing medicaid services to eligible individuals for the fiscal years 1976 through 1979, SRS and the County have paid the hospital pursuant to the "reasonable cost" formula of the medicaid program. The hospital contends that this form of reimbursement is insufficient compensation and as a result has submitted to the County a demand for payment under a "full and adequate" formula (i.e. the standard charges of the hospital minus the reasonable costs already paid by respondents). Respondents maintain that the hospital has been paid in full pursuant to the medicaid program.

Following briefs by the parties in support of their respective motions for summary judgment, the District Court heard oral arguments on April 28, 1978 and thereafter entered its findings of fact and conclusions of law and entered judgment for the respondent on September 5, 1978.

The District Court concluded that federal law governed and rejected the arguments of the hospital that the County and SRS were required by law to compensate further the hospital for services rendered to medicaid patients in Flathead County. We affirm.

The hospital presents 3 issues for our review:

1. Whether Title XIX (medicaid) of the Social Security Act limits reimbursement for hospital care of eligible, indigent patients to "reasonable costs" defined in federal regulations?

2. Whether section 53-3-103 MCA requires the County to pay to the hospital the difference between its "full and adequate costs" and the "reasonable cost" already paid to the hospital under medicaid?

3. Whether SRS and the County of Flathead are bound by implied contractual and equitable principles to pay "full and adequate" costs to avoid unjust enrichment?

The medicaid program, established in 1965 by Title XIX of the Social Security Act is a program of federal reimbursement to states which provide medical assistance to needy persons. A state desiring to participate in the medicaid program must submit to the Department of Health, Education and Welfare (HEW) a plan conforming to the requirements of the Social Security Act. If the plan is approved by HEW, the state is eligible to receive reimbursement. 42 U.S.C. §1396.

Montana began participating in the program in 1967, SRS being charged with supervision thereof. Section 53-6-111 MCA. Beginning in the same year, SRS entered into written contracts with various hospitals throughout the State. Pursuant to these contracts, SRS agreed to pay to the hospitals by supplement "full and adequate costs" to the extent such costs exceeded "reasonable costs". Contrary to medicaid regulations, these contracts were never approved by HEW as a part of Montana's medicaid plan, however, they were construed by this Court to obligate SRS to reimburse the hospitals to the extent of "full and adequate costs as represented by the standard charges of the hospital." See St. James Community Hospital v. Dept. of SRS (1979), _____ Mont. _____,

-3-

_____P.2d_____, 36 St.Rep. 941; Montana Children's Home, et al. v. Dept. of SRS (1979), _____Mont._____, _____P.2d_____, 36 St.Rep. 507; Montana Deaconess Hosp. v. Dept. of Soc. and R. S. (1975), 167 Mont. 383, 538 P.2d 1021.

Title XIX of the Social Security Act, 42 U.S.C. §1396(a) (13)(D) provides:

"(a) A State plan for medical assistance must- . . .

"(13) provide-. . .

> "(D) for payment of the reasonable cost of inpatient hospital services provided under the plan, as determined in accordance with methods and standards . . . which shall be developed by the State and reviewed and approved by the Secretary and (after notice of approval by the Secretary) included in the plan, except that the reasonable cost of any such services as determined under such methods and standards shall not exceed the amount which would be determined under section 1395x(v) of this Title as the reasonable cost of such services for purposes of subchapter XVIII of this chapter; . . ." 42 U.S.C. §1396(a).

The regulations promulgated by HEW pursuant to this statute provides in part:

> "(a) State plan requirements. A State plan for medical assistance under title XIX of the Social Security Act must: . . .

> ". . .

> "(8) Provide that participation in the program will be limited to providers of service who accept, as payment in full, the amounts paid in accordance with the fee structure. (Emphasis added.) 45 C.F.R. §250.30 (1976).

The next year the above cited regulation was redesignated 42 C.F.R. §450.30. In 1978, this same section was again redesignated but this time with "clarifying editorial changes." These changes aid in determining the meaning of the regulation for the purposes of this appeal. The purpose of the changes was to "simplify and clarify the existing regulations without making any substantive change." 43 Fed. Reg. 45176 (1978). The clarified regulation states quite simply:

-4-

"A State plan must provide that the medicaid agency must limit participation in the medicaid program to providers who accept, as payment in full, the amounts paid by the agency." 42 C.F.R. §447.15 (1978).

Participation in the federal medicaid program is voluntary, but if a state elects to participate, it must comply with the requirements of the federal statutes and regulations in order to remain eligible for federal funds. See, Shea v. Vialpando (1974), 416 U.S. 251, 253, 94 S.Ct. 1746; King v. Smith (1968), 392 U.S. 309, 317, 88 S.Ct. 2128; Aitchison v. Berger (N.Y. 1975), 404 F.Supp. 1137, 1141. Montana as a participant in the medicaid program must conform to the Social Security Act and all valid regulations promulgated thereunder as long as it remains in the program.

Contrary to appellant's assertion, the above cited regulation does prohibit supplementing the payments made under the "reasonable cost" formula from any source. In Johnson's Professional Nursing Home v. Weinberger (5th Cir. 1974), 490 F.2d 841, 844, the Court stated:

"Nothing in the statutory scheme or in the statutory history indicates that Congress meant to preclude the reasonable cost standard as a measure of reasonable charges consistent with efficiency, economy, and quality of care. The statutory limit, reasonable charges, etc., applies to all state medicaid payments." (Emphasis added.)

Federal law and regulations clearly proscribe supplementing State medicaid payments beyond the amounts specified by the "reasonable costs" formula.

Under the second issue the appellant contends that section 53-3-103 MCA (1979), mandates the County to pay to the hospital the balance due for services rendered to medicaid patients after receiving credit on account for SRS medicaid payments. The statute reads in pertinent part as follows:

-5-

"Medical aid and hospitalization for indigent.
(1) Except as provided in other parts of this
title, medical aid and hospitalization for county
residents and nonresidents within the county
unable to provide these necessities for themselves
are the legal and financial duty and responsibility
of the board of county commissioners and are payable
from the county poor fund.. . ."     (Emphasis added.)

The emphasized language in the cited statute was added by
amendment in 1965. It was in that year that the State Legislature
implemented a program of medical assistance for the aged, by
enacting Section 1, Chapter 212, Laws of 1965 which was codified
as sections 71-1501 through 71-1510, R.C.M. 1947. Both of these
measures were enacted in the same section. It is apparent that
the additional language refers to the new provisions of Chapter
15, Title 71 providing medical aid to the aged.
In 1967, the medicaid program was implemented in section 1,
Chapter 325, Laws of 1967. These same provisions which implemented
medicaid for Montana also repealed sections 71-1501 through
71-1510, R.C.M. However, no change was made in section 53-3-103
MCA in 1967 (formerly section 71-308(1)(2)(4)(5), R.C.M. 1947).
Therefore, in the absence of any repealing language, it is presumed
that this language can only refer to the new Medicaid program which
was codified under the same title.

Action by the recent legislature affirms this interpretation.
House Bill No. 692 added the following emphasized language to
section 53-3-103 MCA:

"(3) The department may promulgate rules to
determine under what circumstances persons in
the county are unable to provide medical aid
and hospitalization for themselves, including the
power to define the term 'medically needy'.
However, the definition may not allow payment
by a county for general assistance - medical for
persons whose income exceeds 300% of the limitation
for obtaining regular county general relief assistance
or for persons who are eligible for medicaid in
accordance with Title 53, chapter 6, part 1, or
for persons who have the right or are entitled to
medical aid and hospitalization from the federal
government or any agency thereof." Section 1,
Chapter 707, Laws of 1979.

-6-

The House Bill states that it was introduced at the request of the Code Commissioner for clarification purposes only, to ensure that medicaid eligible persons may not receive County medical assistance.

This Court has no quarrel with appellant's contention that the County has an obligation to provide medical assistance to the indigent under section 53-3-103 MCA. The Court does differ however, with the contention of the appellant as to the financial extent of reimbursement from federal sources when the county assumes the obligation. Contrary to appellant's assertion that the regulations promulgated by SRS are not a substitute for the County's obligation to provide medical services to the indigent but rather is one of many resources which must be applied to reduce the County's obligation, this Court views the regulations differently. The ARM regulation refers to "eligibility" as well as "medical resources." The regulation states in pertinent part:

"Eligibility, Medical Resources

"(1) County Medical programs are not to be considered resources. Therefore, applicants or recipients who have access to medical resources will be required to use such resources. Such resources include but are not limited to:

"(a) Medical Assistance (Medicaid);" (Emphasis added.) Section 46-2.10(38)-s102030, ARM.

In order for a person to qualify for medicaid, that person must be eligible, and to be eligible a person must qualify under a state plan which has been approved by the Director of HEW. Such a plan must agree with all the statutes and regulations promulgated under the Social Security Act. In other words, use of the plan implies legal use under federal regulations which in turn means sole use by definition.

Appellant also contends that such a construction will result in higher charges to the cash-paying public in violation of

42 U.S.C. §1395x(v)(1)(A). This argument was addressed by this Court in St. James Community Hospital v. Dept. of SRS, supra, 36 St.Rep. at 944: "We note . . . that the 'reasonable cost' limitation under the federal statute and regulation is designed to encourage 'economy, efficiency and quality of care' . . . (citations omitted.) It is not for this Court to modify this general policy by adopting a different standard than that intended by Congress." Hospital's remedy, if one is to be obtained, is at the federal level.

Appellant's last issue is also without merit. The principle underlying the implied contract doctrine is that one person should not be permitted to be unjustly enriched at the expense of another, but should be required to make restitution for property or benefits received where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. 66 Am.Jur.2d Restitution and Implied Contracts §3 (1973). See also, Brown v. Thornton (1967), 150 Mont. 150, 156, 432 P.2d 386, 390. The circumstances on the record do not justify payment be made based on any other formula than the "reasonable costs" formula.

The decision of the District Court is affirmed.

_____
John C. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-8-