No. 95-217

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

NEIL BANDEROB,

        Plaintiff and Appellant,

    v.

THE ESTATE OF FRANK BANDEROB, deceased,

        Defendant, Third Party Plaintiff,
           Respondent and Cross-Appellant,

    v.

MARTHA BANDEROB,

        Third Party Defendant and Appellant.

FILED

FEB 6 - 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                 In and for the County of Yellowstone,
                 The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Terry L. Seiffert, Attorney at Law, Billings,
                Montana

        For Respondent:

                Mark E. Noennig; Hendrickson, Everson, Noennig &
                Woodward, Billings, Montana

Submitted on Briefs:  September 7, 1995

Decided:  February 6, 1996

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

All parties appeal from the judgment entered in this case by the Thirteenth Judicial District Court, Yellowstone County, on findings of fact and conclusions of law. Neil Banderob appeals, and the Estate of Frank Banderob (Estate) cross-appeals, from the award to Neil of limited damages in his action against the Estate. Neil and Martha Banderob appeal the award of damages to the Estate on its breach of lease claim. We affirm in part and reverse in part.

We address the following dispositive issues:

1. Did the District Court err in concluding that Neil Banderob consented to the compensation he received?

2. Did the District Court err in concluding that Neil could not recover under quantum meruit?

3. Did the District Court err in concluding that no joint venture existed?

4. Did the District Court err in awarding Neil compensation for his services and improvements to the property?

5. Did the District Court err in concluding that Neil and Martha Banderob owed rent payments to the Estate?

6. Did the District Court err in concluding that Neil is not entitled to a set-off against rent owed, under the theory of unjust enrichment, for the Estate's tax savings from the special use valuation agreement?

2

## FACTUAL AND PROCEDURAL BACKGROUND

Neil Banderob (Neil) is one of four children of the decedent, Frank Banderob (Frank). All of the Banderob children grew up on Frank's ranch near Pryor, Montana. Neil was the only one of the children to live and work on the ranch for most of his life. Over the years, Neil purchased equipment and supplies for the ranch and paid for repairs on ranch equipment. No express agreement, either oral or written, existed between Neil and Frank pursuant to which Neil was paid specific wages or reimbursed for the purchases and repairs he made. For his participation on the ranch from 1955 until Frank's death in 1982, Neil received room and board, spending money, a share of veterinary bills, and a contribution toward insurance and licensing. Frank also provided Neil with cattle, grain and pigs, and the use of ranch pasture and equipment. Neil did custom ranch work for others in addition to his work on Frank's ranch.

In 1981, Neil and his attorney met with Frank and Frank's attorney in an effort to obtain "justice" for Neil's contributions on the ranch. Neil hoped that Frank would "make it right," but acknowledged that it was Frank's decision. Frank never agreed to any change and Neil continued on at the ranch as before.

Frank died in 1982, leaving a 1978 will that devised his estate equally among his four children and designated Neil's brothers Joe and Norman as co-personal representatives. On June 18, 1982, Neil filed a creditor's claim with the Estate for approximately $175,000 for labor, equipment, supplies, and repairs.

3

The Estate rejected his claim. Neil filed this action based on agreement or quantum meruit soon thereafter, seeking compensation for labor, equipment, supplies and repairs, and for the appreciation in value of the property which resulted from improvements he made.

Effective January 1, 1984, Neil and his wife Martha leased the ranch from the Estate for one year. The lease was automatically renewable each year unless terminated in writing six months prior to the end of the year. Annual rent was $11,001.25, to be paid in equal installments of $5,500.63 on January 1 and September 15 each year. Prior to any termination of the lease based on default by Neil and Martha, the Estate was required to serve a written 90-day notice of default.

In October of 1984, the heirs, including Neil, signed a special use valuation agreement under Section 2032(a) of the Internal Revenue Code. Such an agreement reduces the valuation of property for estate tax purposes, provided that a family member materially participates in its operation for 10 years. The Estate saved approximately $110,000 in federal estate taxes as a result of the agreement. Neil did not renegotiate any lease provisions in exchange for signing the special use valuation agreement.

Beginning in September 1986, and excluding the January 1993 payment, Neil and Martha did not pay the semi-annual lease payments. In September of 1987, the Estate sent a letter to Neil and Martha stating that, because they had failed to pay the rent, it appeared that the lease was no longer in effect. Neil and

4

Martha's attorney responded that the lease was still in effect.

On September 28, 1990, the Estate gave Neil and Martha a 90-day notice of default relating to their failure to make rent payments. After Neil and Martha failed to cure the default, the Estate filed a counterclaim in this action alleging breach of the lease and failure to cure default, and seeking accrued and unpaid rent. Neil asserted affirmative defenses to the counterclaim seeking set-offs for expenses he incurred in undertaking unusual maintenance and improvements on the property and for the tax savings realized by the Estate from the special use valuation agreement. He also sought to modify the lease as a result of alleged Agricultural Stabilization and Conservation Service payment modifications.

The Estate mailed Neil and Martha a second notice of default on May 8, 1992, when it discovered that Neil was asserting a defect regarding the earlier notice. Thereafter, the District Court allowed the Estate to file an amended pleading reciting the new default notice and requesting declaratory relief in the event the default was not timely cured. Alternatively, and in the event the court determined, as Neil asserted, that the lease had been terminated, the Estate sought the reasonable value of Neil and Martha's use and occupation of the ranch beginning January 1, 1986. Martha was added as a third party defendant.

The District Court held a bench trial and, thereafter, entered extensive findings of fact and conclusions of law. With regard to Neil's claims against the Estate, the court concluded that Neil

consented to the compensation he received as full payment for his services and supplies contributed to the ranch, that Neil could not recover under quantum meruit and that no joint venture existed between Neil and Frank. In addition, however, the court awarded Neil $19,283, representing $1,640 in compensation and $17,643 in simple interest at 6%, for services to the ranch and $10,000 for the enhanced value of the ranch resulting from improvements Neil made.

With regard to the Estate's counterclaim, the court determined that Neil and Martha had breached the lease by failing to pay rent. It entered judgment for the Estate in the amount of $114,277.45 in delinquent lease payments and interest, as well as lease payments accruing until the lease is terminated and the property vacated. The total amount of Neil's judgment, $29,283, was to be set off against the accrued interest portion of the Estate's judgment against Neil and Martha.

Neil and Martha appeal and the Estate cross-appeals.

STANDARD OF REVIEW

We review a district court's findings of fact under a three-part test to determine whether they are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324-25, 888 P.2d 904, 906 (citations omitted). A finding of fact is clearly erroneous if it is not supported by substantial evidence or, if so supported, the district court misapprehended the evidence or this Court is left with the definite and firm conviction that a mistake has been committed. Daines, 888 P.2d at 906. We review a court's

6

conclusions of law to determine whether they are correct. <u>Daines</u>, 888 P.2d at 906.

DISCUSSION

1.    Did the District Court err in concluding that Neil consented to the compensation he received?

With regard to Neil's claim for compensation for his labor and other contributions to the ranch operation before Frank's death, the District Court found that the benefits Neil received were all that Frank agreed to pay and that Neil remained on the ranch despite Frank's refusal to change his compensation practices. The court also found that, although Neil hoped to negotiate a purchase of the ranch, no agreement was reached and Frank did not promise Neil that he would receive the ranch when Frank died. The District Court determined that Neil was bound by his admission that the only agreement between Neil and Frank was that Frank would pay what he felt like paying and concluded, under § 28-2-503, MCA, that Neil accepted and consented to the compensation he received as being full payment.

Neil does not specifically contend that the court's findings relating to the extent of the agreement between himself and Frank are clearly erroneous. He argues that the District Court erred as a matter of law in failing to conclude, under § 28-2-503(2), MCA, that his lack of knowledge of certain facts invalidated his consent to the compensation and benefits received as full payment. He also asserts that the cases relied on by the court are distinguishable

7

on their facts.

Section 28-2-503(2), MCA, provides that the "voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known or ought to be known to the person accepting." Neil's first contention is that he accepted--and consented to--the compensation and benefits Frank provided based on an "impression" or "anticipation" that the ranch ultimately would be his. Thus, according to Neil, he did not know of the "fact" that he would not inherit the ranch and, as a result, his acceptance and consent do not preclude recovery for his labor and other contributions to the ranch.

The problem with Neil's contention is that it is not supported by either the stipulated facts or the evidence presented at trial. Neil stipulated to the fact that no specific agreement entitled him to wages or reimbursement for ranch-related purchases. He also stipulated that, when his mother died in 1975, he signed papers at his father's request transferring property from his mother's name to his father's name. He further agreed that he tried to negotiate with his father through attorneys in 1981 for "justice," hoping that his father would "make it right." Finally, he acknowledged that such decisions were entirely up to his father and that his father never did "make it right."

In addition, as found by the court and not challenged by Neil, Neil's effort to negotiate a purchase of the ranch was not successful. Nor did Frank ever promise Neil that he would receive

8

the ranch when Frank died. Simply stated, and as the court found, the benefits Neil received were all that Frank agreed to pay and Neil stayed on, despite Frank's refusal to pay increased benefits.

The stipulated facts and evidence are clear that, notwithstanding Neil's efforts to acquire the ranch while Frank was alive or ensure that he would receive it after Frank's death, no agreement was reached. The evidence also is clear that, while Neil could have left the ranch at any time, he chose not to do so; indeed, Neil stayed on at the ranch accepting the compensation and benefits Frank provided with full knowledge of the circumstances. These facts, as found by the District Court and unchallenged by Neil, are the pertinent "facts" under § 28-2-503(2), MCA, which were known by Neil in continuing to accept the compensation provided by Frank.

Against this backdrop, Neil argues that his parents "gave him the impression" the ranch would be his some day and he "anticipated" that the ranch would be his someday if he "stuck it out." This argument essentially requests us to determine that the District Court erred in failing to make additional findings--in Neil's favor--and, based on such additional findings, to conclude that he did not consent to the compensation he received.

With the exception of his own testimony in these regards, however, Neil did not provide evidentiary support for either the "impression" or the "anticipation." Neil was required to prove these matters in order to negate the Estate's consent defense; he did not establish them to the District Court's satisfaction.

9

It is the sole province of the trier of fact--here, the District Court--to weigh evidence and determine the credibility of witnesses, and we will not substitute our judgment for that of the factfinder. Magone v. Froehlich (1995), 270 Mont. 381, 387, 892 P.2d 540, 544 (citation omitted). We cannot conclude as a matter of law that, for purposes of § 28-2-503(2), MCA, Neil established his lack of knowledge of material facts regarding the compensation and benefits he accepted and to which he consented.

Neil's second contention is that the District Court erred in relying on Stone-Ordean-Wells Co. v. Anderson (1923), 66 Mont. 64, 212 P. 853, and Cook-Reynolds v. Beyer (1938), 107 Mont. 1, 79 P.2d 658, because those cases involved written agreements. We agree that the facts on which those cases were decided were distinguishable from those in the present case; in addition, it is not clear that those cases are applicable here in any event.

Even assuming that the cases relied on by the District Court were inapplicable, however, Neil presents no authority which supports his position, and we have located none. On the basis of the record before us, we cannot conclude that the District Court erred in determining that Neil consented to the compensation and benefits he received.

2. Did the District Court err in concluding that Neil could not recover under quantum meruit?

Neil asserted a right to recover the value of his services, expenditures and use of his equipment in the ranch operations under the theory of quantum meruit. The District Court concluded that no

10

quantum meruit recovery was available to Neil.

> "Quantum Meruit" as an amount of recovery simply means "as much as deserved," and measures the recovery under an <u>implied contract</u> to pay compensation as the reasonable value of services rendered.

Lutey Construction-The Craftsman v. State (1993), 257 Mont. 387, 391-92, 851 P.2d 1037, 1039 (citing Kintz v. Read (Wash. App. 1981), 626 P.2d 52, 55). An implied contract arises not from consent of the parties, but from principles of natural justice and equity, based on the doctrine of unjust enrichment. St. James Community Hospital v. Dep't of Social and Rehabilitation Services (1979), 182 Mont. 80, 85, 595 P.2d 379, 382 (citation omitted). To establish an implied contract based on unjust enrichment, the plaintiff must demonstrate misconduct or fault of some kind by the defendant or that he was taken advantage of by the defendant. Brown v. Thornton (1967), 150 Mont. 150, 156, 432 P.2d 386, 390 (citations omitted).

Based on its determinations that the benefits Neil received were all Frank agreed to pay and that, by staying on at the ranch under those circumstances Neil consented to the compensation he received, the District Court determined that no implied contract to pay additional compensation existed. The court relied on <u>St. James Community Hospital</u> in concluding that an implied promise to pay for services cannot coexist with a specific agreement to pay a particular amount, or in a particular manner, for services rendered.

Neil contends that <u>St. James Community Hospital</u> is distinguishable from the present case because that decision was

11

premised on the existence of a specific contract to pay, and he is correct that a written contract existed in St. James Community Hospital. See St. James Community Hospital, 595 P.2d at 381. On the other hand, our conclusion in St. James Community Hospital--that no promise to pay the value of services will be implied if there is a special agreement to pay for those services in a particular amount or manner--is not expressly limited to situations involving written agreements to pay. St. James Community Hospital, 595 P.2d at 382. Neil offers no analysis based on either law or logic in support of such a limitation.

We concluded above that the District Court did not err in determining that Neil consented to the compensation he received. That consent created an agreement between Neil and Frank that Neil would accept the amount of money and other benefits Frank provided as payment for his services and other contributions to the ranch. On that basis, and pursuant to St. James Community Hospital, we conclude that no implied promise to pay the value of Neil's contributions exists here as a matter of law.

Neil argues that the evidence shows that Frank took advantage of him and, therefore, that he met the Brown requirement that a plaintiff demonstrate misconduct or fault by the defendant, or that the defendant took advantage of the plaintiff. See Brown, 432 P.2d at 390. Where, as here, the law will not imply a promise to pay because an agreement to pay a particular amount or in a particular manner exists, we need go no further in our analysis of a party's entitlement to recovery under quantum meruit. Therefore, we

12

decline to address Neil's argument that he satisfied the Brown requirement.

We hold that the District Court did not err in concluding that Neil could not recover under quantum meruit.

3.   Did the District Court err in concluding that no joint venture existed?

As an alternative theory of recovery against the Estate, Neil asserted the existence of a joint venture between himself and Frank for the operation of the ranch from 1955 to 1982.  The definition of a joint venture has remained unchanged in Montana for over fifty years.  A joint venture is an:

> "enterprise undertaken by several persons jointly, and more particularly, as an association of two or more persons to carry on a single business enterprise for profit.  It has also been defined, somewhat variantly, as a special combination of persons undertaking jointly some specific adventure for profit."

Wiesner v. BBD Partnership (1993), 256 Mont. 158, 162, 845 P.2d 120, 123 (quoting Sunbird Aviation, Inc. v. Anderson (1982), 200 Mont. 438, 444, 651 P.2d 622, 625 (quoting Rae v. Cameron (1941), 112 Mont. 159, 167, 114 P.2d 1060, 1064-65)).

Four elements must be satisfied in order to establish the existence of a joint venture:

> 1) an express or implied agreement or contract creating the joint venture;
>
> 2) a common purpose among the parties;
>
> 3) a community of interest; and
>
> 4) an equal right of control.

Wiesner, 845 P.2d at 123 (citation omitted).  A joint venture

13

arises only when the intention of the parties to associate themselves in this manner is clearly manifested. Bender v. Bender (1965), 144 Mont. 470, 480, 397 P.2d 957, 962 (citations omitted).

The District Court entered findings with regard to the elements which must be satisfied by a party asserting the existence of a joint venture. Those findings--taken singly and in the aggregate--reflect the court's determination that Neil did not satisfy any of the required elements for a joint venture, and form the basis for the court's conclusion that no joint venture existed as a matter of law. Neil purports to rely on the Wiesner principle that the agreement to create a joint venture may be inferred from the parties' conduct or the surrounding circumstances and, on that basis, argues legal error by the court. His position, however, essentially requests this Court to make findings different from those made by the District Court on each required element of a joint venture.

With regard to the first element, the court found that no agreement existed under which Neil and Frank created the joint venture and that nothing of record evidenced a clear intent to establish such a venture. Neil does not contend that these findings are unsupported by substantial evidence or otherwise clearly erroneous and, based on the record before us, no such contention could be successful. There is no question but that the District Court's findings in this regard are supported by substantial evidence; moreover, the court did not misapprehend the evidence in this regard and we are not left with a definite and

14

firm conviction that a mistake has been committed. See Daines, 888 P.2d at 906.

Neil asserts that he satisfied the first--and, indeed, every--element required to establish the existence of a joint venture. His arguments consist of conclusory statements that "the facts clearly reflect that [he] in fact did meet all of the elements of a joint venture" and that "the conduct of the parties from 1955 to 1982 clearly reflected they were acting in unison to keep the ranch in operation." Such assertions ignore our standard in reviewing a district court's findings of fact. We will not substitute our judgment for that of the finder of fact by reweighing evidence and redetermining the credibility of witnesses. See Magone, 892 P.2d at 544.

We conclude that the District Court's findings of fact relating to the nonexistence of an express or implied agreement creating the joint venture are not clearly erroneous. Because each of the four Wiesner elements must be satisfied by the party claiming the existence of a joint venture (see Wiesner, 845 P.2d at 123), these findings provide a sufficient basis for the District Court's conclusion that no joint venture was established as a matter of law. Therefore, we need not address Neil's similar arguments regarding the remaining three elements necessary to establish the existence of a joint venture.

We conclude that the District Court did not err in concluding that no joint venture existed.

15

4. Did the District Court err in awarding Neil compensation for services and improvements to the property?

The District Court awarded Neil $1,640 as full compensation for his services, including contributions of equipment and supplies, together with 6% simple interest, for a total of $19,283. The court also awarded Neil $10,000, as a set-off against rent owed, for the contributory value of improvements made to the ranch during the lease which unjustly enriched the Estate.

Neil contends that the District Court erred by summarily relying on the calculations and information submitted by the Estate's expert in awarding only $19,283 on his quantum meruit claim for services as a ranch hand. The Estate cross-appeals from both monetary awards to Neil. Regarding the award for services, the Estate argues that no basis for any award for services remained after the court properly rejected Neil's quantum meruit and joint venture theories. Regarding the award on Neil's claim for the contributory value of repairs and improvements he made on the ranch during the lease, the Estate contends that no award is available as a matter of law where the property did not increase in value as a result of the improvements. We address the Estate's cross-appeal first, looking at each of these awards in turn.

We concluded above that the District Court did not err in determining that Neil consented to the compensation and benefits Frank provided for his services. We also concluded that the court did not err in determining that Neil could not recover compensation for his services to the ranch based on either a quantum meruit recovery or the existence of a joint venture. We note, in

16

addition, that the District Court entered a finding of fact that "[b]enefits paid to Neil for his work on the ranch from 1955 to 1982 were equal to the reasonable value of his services." Because no legal basis remained upon which an award for Neil's services on the ranch properly could be premised, we conclude that the District Court erred in awarding Neil $1,640 as compensation for his services as a ranch hand, including his contributions of equipment and supplies.

The parties also dispute the nature and legal propriety of the court's award of $17,643 as "6% simple interest" on the $1,640 award to Neil for his services. Neil contends that this award is a conversion of the $1,640 award into current dollars or, in other words, an adjustment for inflation. The Estate argues that the court erred as a matter of law in awarding either "legal interest" under § 31-1-106, MCA, interest pursuant to an agreement in writing under § 31-1-107, MCA, or prejudgment interest under § 27-1-211, MCA. We need not resolve this dispute. Our conclusion that the District Court erred in awarding Neil the $1,640 onto which the "interest" was added--or, under Neil's approach, the conversion into current dollars was applied--necessitates our further conclusion that, however denominated, the court erred in awarding Neil the additional $17,643. Moreover, based on our conclusions on this cross-appeal issue that the District Court erred in awarding Neil both the $1,640 for services and the $17,643 as interest, we need not address Neil's argument that the court erred in relying on the Estate's expert to minimize the amount of his award.

17

The Estate also cross-appeals the District Court's award to Neil of $10,000, for improvements he made to the ranch during the lease, as a set-off against rent owed. The court entered findings that the value of the ranch was enhanced by $10,000 because of Neil's improvements and that the Estate was unjustly enriched in that amount. Thereafter, relying on Overcast v. Akra (1982), 197 Mont. 276, 642 P.2d 1058, the court concluded that tenants could be reimbursed only for improvements which were permanent and which enhanced the value of the property. Further concluding that the ranch decreased in value over the relevant period of time, the court ultimately concluded that the Estate had not been unjustly enriched. Notwithstanding these latter conclusions, the court's judgment included the $10,000 set-off against the judgment in the Estate's favor for improvements Neil made to the ranch.

In Overcast, the lessee made improvements to the land in hopes of eventually purchasing it. When the lease expired, the lessor offered to sell the land to the lessee, but the terms were unacceptable to the lessee. Ultimately, the lessee filed suit to recover his costs in making permanent improvements. Overcast, 642 P.2d at 1060. The "improvements clause" in the lease did not encompass nonremovable improvements and, at trial, the lessee failed to present evidence that his improvements increased the value of the land. Overcast, 642 P.2d at 1062. We held that a lessee may not recover for making permanent improvements unless the improvements enhance the property's value; stated differently, "if the tenant has not made the premises more valuable to the owner,

18

the owner has no obligation to make compensation, however great the expenditures may have been." Overcast, 642 P.2d at 1062 (citations omitted).

Here, the parties stipulated that, over the period from 1982 to 1991 during which Neil made the improvements at issue, the appraised value of the ranch decreased from $432,600 to $210,000. Such a decrease in value is not determinative of whether Neil's permanent improvements increased the value of the ranch for Overcast purposes, however, since it is possible that a larger decrease in value would have occurred absent Neil's improvements.

Whatever the "contributory value" or costs incurred in making the improvements may have been, the record supports only a $1,900 enhancement in the value of the ranch from Neil's improvements. Thus, the District Court's finding that the ranch increased in value by $10,000 as a result of Neil's improvements is not supported by substantial evidence. The Estate "has no obligation to make compensation, however great the expenditures may have been" for improvements that did not increase the value of the ranch or for repairs that were the tenant's duty under the lease. See Overcast, 642 P.2d at 1061-62.

Neil asserts that the Estate conceded the $10,000 amount via the testimony of its expert. The record reflects, however, that the expert's report states only that the value of the ranch may have been enhanced by as much as $10,000. This figure included a specific increased value of $1,900, but also included $5,025 Neil spent for repairs; no testimony or other evidence related this

19

dollar amount for repairs to any increase in the value of the ranch. Furthermore, the District Court correctly concluded that Neil and Martha are not entitled to compensation for repairs which were their duty under the lease.

Additionally, the expert rounded his maximum increase in value of the ranch up to $10,000 by noting that there "[m]ay have been some other contributions out there[.]" This testimony is insufficient to serve as substantial evidentiary support for the difference between the established $1,900 increased value and the $10,000 award.

We conclude that the District Court's finding that Neil's improvements increased the value of the ranch by $10,000 is clearly erroneous and that substantial evidence supports a $1,900 increase in value to the ranch as a result of permanent improvements by Neil. We further conclude that the court correctly determined, pursuant to Overcast, that Neil was not entitled to recover for repairs or improvements which did not increase the value of the ranch. We hold that the court erred in including in its judgment the $10,000 for improvements; we also hold, however, that Neil is entitled to judgment in the amount of $1,900 for such improvements.

5. Did the District Court err in concluding that Neil and Martha owed rent payments to the Estate?

In its counterclaim and third party complaint, the Estate alleged that Neil and Martha breached the lease by failing to make the rent payments, and sought recovery of the unpaid rental amounts and interest thereon. Based on its findings that Neil and Martha

20

failed to make the rental payments required by the lease and that the lease does not require a notice of default before pursuing a claim for rent, the District Court concluded that Neil and Martha were liable to the Estate for the lease payments. The court separately determined that the payments were due as a result of Neil and Martha's failure to cure the defaults of which they were given notice and that any error in the first notice of default was cured by the second notice which Neil received and Martha was presumed to have received.

Neil and Martha do not challenge either the District Court's findings or its Conclusion of Law #12, based on those findings, that they are liable to the Estate for the unpaid rent. They assert error only with regard to the court's Conclusion of Law #13, which related to the sufficiency of the notices of default. They contend that, because the earlier notice incorrectly stated the amount owed and the second notice was not "served" on them, the Estate is precluded from pursuing its claim for rent. We need not address Neil and Martha's argument regarding the sufficiency of the default notices, however, given the court's unchallenged separate determinations that they breached the lease and that the lease did not require the Estate to give notice of default before pursuing a breach action based on failure to pay rent.

In pertinent part, the default provision in the lease provides:

> Default by Tenants prior to termination of lease. If the Tenants should fail to carry out substantially the terms of this lease, the Landlord may serve a ninety (90) day written notice to the Tenants of the Tenants' failure

21

to fulfill the terms of this rental agreement, specifying the exact default, and the requirements to correct said default.

If the Tenants fail to correct such default within the ninety (90) days, the Landlord shall have the right to re-enter and to take full possession of the farm and buildings . . . .

This provision establishes the necessity of a 90-day written notice of default and an opportunity to cure before the Estate could re-enter, take possession of the ranch and terminate the lease. It does not require such a notice before the Estate may pursue a breach claim for unpaid rent.

The Estate did not pursue its right of re-entry under the lease pursuant to the notices of default. The claim pursued by the Estate is a claim for rent owed by Neil and Martha under the lease. Thus, the District Court's finding that the lease does not require a notice of default before a claim for rent may be pursued is supported by the language of the lease. Moreover, Neil and Martha admitted, and the court found accordingly, that they failed to make the rent payments as alleged by the Estate.

While a lease is in effect and prior to any termination, tenants are liable for unpaid rent pursuant to the lease. Montana Williams Double Diamond Corp. v. Hill (1978), 175 Mont. 248, 255, 573 P.2d 649, 653 (citation omitted). Although Hill involved distinguishing when rent was due under a lease from when unlawful detainer entitles a landlord to treble damages, our statement that the tenant remains liable for rent under an existing lease is applicable to the instant case. Here, the District Court found that the lease was never terminated by either party; indeed, Neil

22

admitted at trial that the lease was still in existence. We hold, therefore, that the District Court did not err in concluding that Neil and Martha are liable to the Estate for the rent owing and unpaid under the lease.

Neil and Martha also contend that the District Court erred in concluding that the Estate was not estopped from pursuing its rent claim. Their contention is based on a 1987 letter from the Estate's counsel containing Joe Banderob's view that the lease was no longer in existence because of the unpaid rent payments. According to Neil and Martha, the Estate should be estopped from changing its position in 1990 by claiming a right to unpaid rent under the lease.

The object of equitable estoppel is to prevent a party from taking unconscionable advantage of its own wrong while asserting its strict legal right. Matter of Shaw (1980), 189 Mont. 310, 316, 615 P.2d 910, 914 (citation omitted). An essential element of equitable estoppel is that a party must detrimentally rely on another's conduct. King v. Rosebud County (1981), 193 Mont. 268, 279, 631 P.2d 711, 717 (citing Shaw, 615 P.2d at 914). The party claiming estoppel must act upon the other's representation in a manner that changes his position for the worse. Carroccia v. Todd (1980), 189 Mont. 172, 177, 615 P.2d 225, 228 (citation omitted).

Here, Neil and Martha did not establish that they detrimentally relied on the 1987 letter from the Estate. Indeed, in response to the Estate's letter, Neil's attorney immediately communicated that the lease was still in effect and there were no

23

further communications in that regard. Neil and Martha continued to live and work on the ranch and receive income from it. We conclude, therefore, that the District Court did not err in rejecting Neil and Martha's estoppel theory.

Finally, Neil and Martha contend that laches bars the Estate's claim because the Estate failed to pursue a claim for rent during the period between 1986 to 1990. Laches is an equitable concept which is applicable when there has been an unexplained delay of such a duration and character that would create an inequitable result if the asserted rights were enforced. Filler v. Richland County (1991), 247 Mont. 285, 290, 806 P.2d 537, 540 (citation omitted). Laches is not applied due simply to elapsed time, but turns primarily on whether it would be inequitable to enforce the asserted claim; each case must be determined in light of its own particular circumstances. Filler, 806 P.2d at 540.

Here, the lease is a written agreement between the parties which has remained in effect since it was executed in 1984. The first breach vis-a-vis nonpayment of rent occurred in September of 1986. The statute of limitations for an action on a written agreement is eight years. Section 27-2-202(1), MCA. It is undisputed that the Estate counterclaimed for breach of the lease via unpaid rent in 1991, well within the time limit specified by the statute. When an action is filed within the applicable statute of limitations, the party claiming laches must demonstrate that extraordinary circumstances exist requiring the application of laches. In re Marriage of Hahn and Cladouhos (1994), 263 Mont.

24

315, 319, 868 P.2d 599, 601 (citation omitted).

Neil and Martha contend that the Estate waited to pursue its action for rent until the special use valuation agreement period was over and the Estate had saved $110,693 in taxes; under such a circumstance, they urge that allowing the Estate to enforce the lease would be inequitable. We fail to understand how a benefit to the Estate clearly contemplated by all who executed the special use valuation agreement, including Neil, can constitute such an extraordinary circumstance as to require the application of laches to the Estate's timely pursuit of a remedy under the lease between the parties. This is particularly true in light of Neil's admissions that the lease remained in existence, that rent was not paid and that Neil and Martha continued to receive the benefits of the lease. Moreover, Neil and Martha do not challenge the District Court's finding that the Estate refrained from terminating the lease because Neil hoped to make the payments "when better times came."

Neil and Martha have not demonstrated any extraordinary circumstances which would require the application of laches to the Estate's timely claim. See Marriage of Hahn and Cladouhos, 868 P.2d at 601. Nor, under the circumstances of this case, have they established any inequity resulting from requiring them to pay the rent the lease requires. We conclude that the Estate's claim for rent under the lease is not barred by laches.

> 6. Did the District Court err in concluding that Neil is not entitled to a set-off against rent owed, under the theory of unjust enrichment, for the Estate's tax savings from the

25

special use valuation agreement?

Neil and Martha claimed that the Estate was unjustly enriched in the amount of the tax savings resulting from the special use valuation agreement because Neil operated the ranch during the special use valuation period. On that basis, they asserted entitlement to a set-off against rent owed for the $110,000 the Estate saved under the special use valuation agreement.

The District Court found that Neil was aware of the Estate's intent to seek the special use valuation before he signed the lease, but included no provision in the lease allowing compensation to Neil and Martha--or less rent from them--upon his later execution of the agreement. Moreover, Neil freely entered into the special use valuation agreement, together with Frank's other heirs, some five months after the lease was executed. Under such circumstances, the District Court found no fault or misconduct by the Estate with regard to the special use valuation agreement. The court concluded that the existence of a written lease expressly stating the payment--and other--rights and responsibilities of the parties, and the absence of misconduct by the Estate, precluded recovery by Neil of the $110,000 estate tax savings under an unjust enrichment theory.

Neil and Martha do not specifically contend that any of the District Court's findings of fact relating to the special use valuation agreement and their unjust enrichment claim are clearly erroneous. Instead, they advance conclusory statements such as "[o]bviously they were put in a position of being taken advantage

26

of. . . ." Neil and Martha also do not assert error with regard to the District Court's legal conclusions; indeed, they cite no legal authority in presenting this issue.

As discussed under issue two above, plaintiffs seeking recovery under a theory of unjust enrichment must establish misconduct or fault of some kind by the defendant, or that the defendant took advantage of them. Brown, 432 P.2d at 390. Here, the District Court found no fault or misconduct by the Estate. We review that finding under the clearly erroneous standard. See Daines, 888 P.2d at 906.

The evidence supporting the court's finding indicates that, at the time Neil executed the lease with the Estate in May of 1984, he knew that the Estate intended to seek the special use valuation agreement. With that knowledge, he chose to enter into the lease which contained certain express rental, and other, provisions. Some months later, Neil chose--together with Frank's other heirs-- to execute the special use valuation agreement which would result in estate tax savings to the ultimate benefit of the Estate and, therefore, the heirs. The upshot of these two transactions was that Neil made himself a party to two separate written agreements, each of which contained express terms relating to the subject matter of the agreement, and neither of which referenced or varied the terms of the other. The aim of the special use valuation agreement ultimately was achieved: the Estate benefited by saving approximately $110,000 in federal estate taxes. We conclude that the District Court's finding that the Estate was not at fault or

27

guilty of any misconduct by electing the special use valuation and not paying the tax savings to Neil is supported by substantial evidence.

Neil's conclusory arguments in this regard essentially request us to determine that evidence exists to support a finding different from that made by the District Court or, in the alternative, to simply make our own finding that there was fault or misconduct by the Estate. Neither alternative is available under our standard of review of trial court findings. See Daines, 888 P.2d at 906. It is the sole province of the trier of fact--here, the District Court--to weigh evidence and determine the credibility of witnesses; we will not substitute our judgment for that of the factfinder. See Magone, 892 P.2d at 544. We conclude that the District Court's finding of no fault or misconduct by the Estate is not clearly erroneous.

On the basis of its finding that Neil had not established the necessary fault/misconduct by the Estate, the District Court concluded that Neil was not entitled to a set-off against rent owed, under the theory of unjust enrichment, for the Estate's tax savings from the special use valuation agreement. As set forth above, there can be no recovery under a theory of unjust enrichment absent demonstrated fault or misconduct by the defendant. See Brown, 432 P.2d at 390. We hold, therefore, that the District Court did not err in concluding that Neil was not entitled to the set-off under the theory of unjust enrichment.

We affirm in part and reverse in part. As a result of the

28

partial reversal, we modify the judgment entered by the District Court by decreasing the judgment in favor of Neil Banderob to the amount of $1,900, decreasing the set-off against the accrued interest portion of the Estate's judgment to that amount and increasing the amount of the net judgment entered against Neil and Martha Banderob, and in favor of the Estate, accordingly.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

29